JOHN T. MOULTON *vs.* CHARLES O. GAGE & another.

Suffolk.   Nov. 13, 1884.—Jan. 9, 1885.   FIELD, DEVENS, & COLBURN, JJ.,
absent.

If a person is employed upon a raised platform, not guarded by a railing, to assist
in guiding blocks of ice over wooden tracks, adjoining the platform, from an
elevator at the top to a house at the bottom, he cannot maintain an action
against his employer for an injury caused by his falling off the side of the
platform, the absence of the railing and the risks consequent thereon being as
well known to him as to his employer.

TORT for personal injuries alleged to have been received by
the plaintiff while in the defendants' employ, through the al-
leged negligence of the defendants, in failing to furnish safe and
proper means and appliances for doing the work.   Trial in the
Superior Court, before *Mason*, J., who allowed a bill of excep-
tions, in substance as follows :

It was admitted that the plaintiff was employed by the defend-
ants at the time of the alleged injury ; and that the buildings,
means, and appliances for doing the work were owned, furnished,
and operated by the defendants.

The plaintiff introduced evidence tending to show that he was
set to work by the defendants upon certain ways or runs lead-
ing from an elevator to certain ice-houses situated at Spy Pond
in Arlington ; that said runs or ways consisted of a series of
wooden tracks laid on transverse timbers, over which tracks ice
was passed from the elevator to the ice-houses, and of wooden
plankings or platforms, five feet and six inches wide, on either
side of said tracks, upon which platforms the men engaged in
conducting the ice from the elevator to the ice-houses custom-
arily stood; that said ways or runs were arranged one above
another to the height of five stories, and were slightly inclined
towards the ice-houses; that the wooden platforms described were
protected on one side by railings at the outer edge, but on the
other side there were no railings or other protection at the time
of the accident, except upright posts about eighteen feet apart.

The absence of such railings or other protection constituted
the defect complained of, and the accident, consisted in the
plaintiff's falling from the platform at the second story of the

run on the side where there was no railing or other protection, except as above stated, a distance of fourteen feet, upon blocks of ice at the surface of the pond below, by which fall the evidence tended to show that he sustained severe and permanent, injuries.

It appeared that, in performing the labor of storing ice, the blocks of ice were raised from the surface of the pond by an apparatus in the elevator building operated by steam power, and were passed rapidly in close succession down the track in the way or run to the ice-houses; that men were stationed at intervals upon the platforms, with proper implements to push the ice in its course, or retard it when moving too fast, and that this was a part of the plaintiff's duty; that the men so employed, including the plaintiff, ordinarily stood close up to the track upon which the ice ran, and guided the ice·in its course by means of ice-hooks; that occasionally gluts or jams of ice would occur upon the track, generally occasioned by the breaking of a block of ice, thus stopping the course of the ice on the track; that, on the occurrence of such gluts or jams, it was the duty of the men at work upon the run to go as speedily as possible to the point where the jam occurred and relieve the jam by removing from the track and pushing from the platform the broken block, and the plaintiff, when he commenced work for the defendants, received instructions accordingly; that, at the clearance of such jams, there was at times much crowding, excitement and shouting, the men attacking the jam at the first block caught; and that it was a part of the plaintiff's duty to assist in relieving such jams.

It appeared that the plaintiff had never before worked upon an elevated ice-run; but he testified that he had seen them gathering ice at the same pond before, but not on such a run as this, though it had a track for the ice to go along upon, and there used to be gluts or stoppages of the ice, and he very well knew when he went to work that gluts of the ice would happen, which would require the workmen to pull it off as they best could; that he first entered the defendants' employ on Monday morning, January 15, 1883; that during Monday and until Tuesday noon he worked upon the first story of the run, his position being assigned to him by the defendants' foreman; that on Tuesday

afternoon he began to work upon the second story of the run, at a position there assigned him by the foreman, being just at the entrance of the elevator building, and at a point on the platform which was protected, and the same position as he occupied on the lower run. Below, towards the ice-houses on the plaintiff's side of the track, the platform was unprotected by a railing or otherwise, except as above stated; and the plaintiff testified that he knew this fact. On Wednesday morning, January 17, at about nine o'clock, the plaintiff being then at work with his ice-hook guiding the ice on the track and standing close thereto at the same place as on Tuesday afternoon, a jam of ice occurred on the track at a point from ninety to one hundred feet from the plaintiff, towards the ice-houses, and at a point where the platform was unprotected by a railing or otherwise, except as above stated. In obedience to the order of the defendants' foreman, the plaintiff left his position and came down the run with his ice-hook to assist in clearing the jam, and at the same time the plaintiff's fellow workmen assembled at the same point from all directions for the same purpose. The plaintiff testified that the men were "all in a bunch, as thick as bees," and that a man opposite, on the side of the run having a railing, pried up the broken ice with a bar, while the men on the plaintiff's side removed it. Another workman who was present at the jam testified that from fifteen to eighteen men were assembled at the point. There was also evidence that, while so assisting in clearing the jam, the plaintiff worked in the same manner and position as the other men so working. The work of clearing the jam being completed, the plaintiff started for his former position, and had gone two or three steps when he felt something brush against his shoulder, and felt a sensation of falling. He clutched for support, and had no consciousness of what followed. He was immediately after picked up at the foot of the run unconscious, with a scalp wound on the left side of his head. It appeared that six or seven jams had occurred upon the two runs during the plaintiff's employment, and that he had assisted in clearing some of them; and the plaintiff testified that he had been down the platform upon the side he worked upon once or twice, and upon the other side two or three times.

On cross-examination, the plaintiff testified that, to his best knowledge and belief, a fellow workman brushed against his shoulder, or his shoulder brushed against a fellow workman, which caused him to fall.

The plaintiff was twenty-five years of age when the accident happened; and his father testified that he was, at the time of the accident, physically and mentally as able and as capable as other young men of his age.

Upon the conclusion of the plaintiff's testimony, the defendants asked the judge to rule that, as matter of law, the action could not be maintained. The judge so ruled, and directed a verdict for the defendants; and the plaintiff alleged exceptions.

*H. F. Buswell,* (*G. G. Pratt* with him,) for the plaintiff.

*H. G. Parker,* for the defendants.

W. ALLEN, J. The ruling was correct. The plaintiff was employed to work upon the platform as it was constructed. There was no hidden defect in it; it was what it appeared to be. The absence of the railing and the risks consequent thereon were obvious, and as well known to the plaintiff as to the defendants; and, upon familiar principles, the plaintiff cannot recover for injuries sustained in consequence of it.

*Exceptions overruled.*