CATHARINE MURPHY, administratrix, *vs.* LEANDER GREELEY.

Suffolk. January 17, 1888. — February 29, 1888.

Present : MORTON, C. J., DEVENS, HOLMES, & KNOWLTON, JJ.

*Negligence — Personal Injuries — Evidence — Due Care.*

A contractor to do the carpenter-work on a brick building in process of erection, who hires an experienced carpenter in the full possession of his faculties to do the furring on a room, is not bound to maintain artificial lights to prevent his wandering out of a regular passageway, and will not be liable to him if he so wanders in the darkness, and, falling through an opening in another room, is injured.

Evidence of the usage of builders as to guarding the openings in the floors of buildings in process of construction is competent on the question whether an experienced carpenter, who is injured by falling through such an opening, was in the exercise of due care.

TORT for personal injuries occasioned to the plaintiff's intestate, by falling through an opening in the first floor of a building in process of erection, while in the defendant's employ.

At the trial in the Superior Court, before *Mason*, J., it appeared that the defendant had made a contract to perform all the carpenter-work required in the construction of a family hotel. At the time of making this contract, the defendant saw the plans of the building, including the plan of the first floor, and for a long time prior to the accident had been upon the premises five or six times every week, and was familiar with the

different parts of the building. The defendant began his work under his contract, and prior to the time of the accident had laid the flooring on the first floor, and had completed some other parts of the carpenter-work in the building. In laying this floor the defendant had, following the plan, left, in the floor of a room marked "store-room," an opening which was intended for a stairway to the cellar, in which at the time of the accident no staircase had been built.

On January 6, 1885, the plaintiff's intestate, James Sinnott, was employed by the defendant's foreman, who was authorized to employ help, to fur a certain room in the building other than the store-room. Sinnott was fifty-five years of age, a carpenter by trade, with full possession of all his faculties, and had worked on carpenter-work in the construction of buildings for more than twenty years. Sinnott was to work for so much per square, and nothing was said to him as to the hours when he was to work. No contract had been made with him for furring any other rooms, and under his contract he had no employment or business taking him into the store-room. The only way of going, as Sinnott testified, from the street entrance of the building to the room where he was employed, or of returning from that room to the street, was by a passageway which, at about the centre of the building, led through an opening adjoining a passageway leading into the store-room. In the neighborhood of both these passageways it was at times very dark, and was so at the time of the accident, so that a person who had just come in from the light could not see his hand before his face. One witness testified that on the night of the accident, when he was retiring from his work (about ten minutes after Sinnott quit work), he got lost in this same locality, came near getting into the store-room passageway, and only found his way by lighting a match. All these facts in relation to the position of these passageways, their darkness, and the existence of this opening in the store-room, were known to the defendant, and to his foreman.

On January 7, 1885, Sinnott came to the building as agreed, and, passing from the entrance along the passageway to the room which he had contracted to fur, commenced his work there, and remained in that room during the day. At night he did not retire from the building by the passageway, but

passed out through a window opening on to the street from the room where he was at work. The next day in like manner he returned through the passageway to his work; remained in the room all day as before, stopped work at about five o'clock on account of the darkness, and, being unable to go out of the window as on the evening previous on account of its having been closed and fastened, started for the street entrance of the building by the passageway. When he arrived opposite the passageway leading into the store-room, he became confused on account of the darkness, not having before passed out of the building in this way, and supposing that the passageway leading into the store-room was the passageway which he ought to take, wandered, feeling with his hands and feet, into the store-room, and fell into the opening.

Sinnott did not know of the existence of this opening, and no express notice was given to him of its existence, either by the defendant or Higgins, and no notice at all except such, if any, as can be implied from the facts stated. There was no guard or railing around the opening, or at the entrance to the passage-way leading to the store-room, and no light was put up at any point, either to mark the proper passageway out of the building or to mark the locality of the opening. All the brick partitions, as also all the brick-work of the entire building, which was five stories in height, were completed, and the openings in the walls for light were filled with sashes of cotton cloth, but the wooden partitions on the first floor were not at the time of the accident erected.

The plaintiff called one Harmon, who testified, on cross-examination, that he was a builder and contractor, and supervisor of the erection of buildings, and had been for many years; that it was not usual in erecting buildings to protect, or guard, or light up holes and openings in the floors, while in the process of construction, nor to light up the passageways in such buildings by artificial light. This was objected to by the plaintiff, but was admitted by the judge. The defendant called certain builders and contractors, who testified that it was not the custom in erecting buildings to protect, or guard, or light holes and openings in the floors of buildings while in the process of construction, and that the usage was to leave them open and

unguarded. The defendant, in offering this testimony, did not state for what purpose it was offered; but the judge admitted it generally, under objection.

The judge ruled that the action could not be maintained, and directed a verdict for the defendant; and the plaintiff alleged exceptions.

*W. Gaston & C. L. B. Whitney*, for the plaintiff.

*Samuel Hoar*, for the defendant.

KNOWLTON, J. To determine whether the defendant neglected his duty towards the plaintiff's intestate, we must first inquire what were the relations out of which his duty grew. He had a contract with the owner to do all the carpenter-work upon a large brick building five stories high, then in process of erection. Its outer walls and inside brick partitions were all completed, and the openings for windows were filled with sashes of cotton cloth. The flooring on the first floor had been laid, but the wooden partitions there had not been erected, and the carpenter-work in general was not far advanced. The plaintiff's intestate, James Sinnott, made a contract with him to do the furring of a room upon the first floor, at a certain price per square yard. The only duty which he owed Sinnott grew out of this contract. The passageway to the place where the work was to be done extended from the main entrance through the building a considerable distance to the room to be furred, and there was evidence that near the centre of the building the locality about the passageway was at times very dark; that at the time of the accident it was so dark that one could not see his hand before his face; and that Sinnott, having stopped work at about five o'clock on account of the darkness, it being winter, attempted to go out through this passageway, mistook his course, went through an opening in the wall which led to a room in the floor of which was an open space for a stairway to the basement, fell through this open space, and was injured. He testified that there was no other way than through this passageway to get to the room where the work was to be done, and it is to be presumed that he passed through it when he was shown the room at the time he took his contract. He entered by it in the morning on each of the two days that he worked. He was fifty-five years of age, a carpenter by trade, in full possession

of all his faculties, and he had worked in the construction of buildings for more than twenty years.

In connection with such a contract, made under such circumstances, the law implied no contract on the part of the defendant, and imposed no duty upon him to have the building in such a condition that persons could wander through it in the darkness away from the regular passageway without risk of falling. Nor was it his duty to maintain artificial lights for those who should choose to attempt to go through after nightfall.

The burden was upon the plaintiff to show that the accident happened through the negligence of the defendant. The defendant was under no obligation to provide against the ordinary risks incident to the performance of the contract which the plaintiff's intestate entered into, nor against any special risks incident to the peculiar manner in which he might perform it. If it can fairly be said, contemplating the probabilities from the situation of the parties when they made their contract, that there was any risk that Sinnott would remain at his work until it was so dark in the passageway that he could not see his hand before his face, and then attempt to go through there without a light, and meet with an accident, that must be deemed to have been an ordinary risk of the business which he contracted to do, or a risk growing out of the peculiar manner in which he chose to do it. We do not think there was any evidence of negligence on the part of the defendant.

The testimony introduced in relation to the custom and usage of builders in reference to openings in the floors of buildings while in the process of construction, taken in connection with the testimony of the plaintiff's intestate as to his experience as a carpenter, tended to show what he had reason to expect, and what dangers he was called upon to guard against, and so was competent upon the question whether he was in the exercise of due care. Whether or not it was admissible for any other purpose, in the form in which it was presented, it is unnecessary to decide. *Exceptions overruled.*