## MARY FITZGERALD *vs.* CONNECTICUT RIVER PAPER COMPANY.

Hampden.   September 23, 1891. — December 19, 1891.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Master and Servant — Risks of Employment — Volenti non fit injuria —*
*Negligence — Due Care.*

A woman, in leaving a mill in which she was employed, by means of steps covered with ice, fell and was injured. In an action against her employer to recover for such injuries, there was evidence that the ice was due to exhaust steam from an engine run by the defendant falling upon the steps and freezing, so as to cause varying degrees of slipperiness in different states of the weather; that the plaintiff was fifty-one years of age and had worked in the mill for thirteen years; that the steps afforded the only means of leaving the mill, and fifty women working in the same room with the plaintiff used them daily; that the plaintiff knew the steps to be icy and more or less slippery in the winter season; and that at the time of the accident she was going down the steps with a dinner pail in one hand, and holding on to the railing with the other. *Held,* that there was evidence tending to show that the defendant was negligent and that the plaintiff was in the exercise of due care; that whether the plaintiff assumed the risk was a question of fact for the jury; and that it could not be said, as matter of law, that she appreciated the risk, or that she was not acting under such an exigency as would justify her in going down by the steps, and deprive her act of that voluntary character which is referred to in the maxim, *Volenti non fit injuria.*

TORT, for personal injuries occasioned to the plaintiff while employed by the defendant in its paper-mill, through an alleged defect in a stairway leading to and from the mill. Trial in the Superior Court, before *Mason*, C. J., who allowed a bill of exceptions which, so far as material, was as follows:

"The evidence introduced by the plaintiff tended to prove that the plaintiff, a woman fifty-one years of age, had been working in the mill of the defendant thirteen years, though not all the time for the same company; that she worked in the rag-room all the time; that there was a stairway of seven steps outside the building, leading from the ground to a platform, which led to a door, and which door led to the room in which the plaintiff worked; that this was the only stairway provided for entering and leaving said room; that during the winter of 1890 and 1891 there were about fifty women employed in said room, and that

all of them used said stairway; that in another building opposite the side of said stairway, and about twenty-eight feet from said stairway, there was a steam exhaust pipe which came through the side of the building at the third story, and about thirty feet west of said stairway; that the said stairway had been icy a large part of the winter; that the spray from the steam from said pipe frequently fell upon said steps and platform, and froze thereon, making them slippery; that on the evening of the 16th, and on the day of the 17th of March, 1891, all of said steps were covered with ice, rough and uneven, and so thick that the wood of the steps could not be seen, and so dangerous to passage thereon that, on the said 17th, two or more women who worked in said room jumped from a platform on one side of said stairway, and which was about four feet high, and one or two other women came down from step to step in a sitting position; that the bottom step was covered out of sight with snow and ice; that the plaintiff took her dinner with her; that she left work to go home about five o'clock on the evening of March 17, 1891; that said stairway had a railing on one side, and a platform on the other; that she took her dinner pail in one hand, and a hold on the railing, which was icy, with the other, and walked down the steps; that when she stepped down upon the step next to the bottom one, she slipped, fell down, and was injured; that said step from which she fell was old and worn, and icy as aforesaid.

"It appeared that the plaintiff well knew the condition of the steps, that they were old and worn, and also knew the location of the steam waste pipe, and that it threw spray upon the steps in question, and caused them to be icy in freezing weather; and the plaintiff testified that the steps were icy, and that she saw they were icy before she went down, and before she started to go down.

"The defendant offered evidence tending to prove that the plaintiff might have come out of the building and gone home without coming down said stairway; that when the wind blew in the direction of the steps, it carried said spray thereon, and that the engine which caused said steam to flow was in operation at odd times, such as high or low water, and about one eighth of the year altogether."

At the close of the evidence, the judge ruled, at the request

of the defendant, that the plaintiff could not maintain her action, and directed a verdict for the defendant; and the plaintiff alleged exceptions.

*T. B. O'Donnell,* for the plaintiff.

*T. M. Brown,* for the defendant.

KNOWLTON, J.   There was evidence proper for the consideration of the jury on the question whether the defendant corporation was negligent in permitting the steps on which the plaintiff was injured to be slippery and dangerous.   It was its duty to provide on its premises a reasonably safe passageway for the use of its employees in going to and from their work.

There was evidence that fifty women working in the same room with the plaintiff used the steps daily; and it was a question of fact for the jury whether the plaintiff was in the exercise of due care in trying to go down the steps as she did at the time of the accident.   The fact that she knew them to be icy, and more or less slippery and dangerous, does not require us to hold, as matter of law, that she was negligent in trying to go down them, holding by the rail, — especially if she had no other way of getting from the mill.

The ground on which the ruling for the defendant was made was doubtless that the plaintiff, knowing the icy condition of the steps, assumed the risk of accident, and thereby precluded herself from recovering.

It is well settled that a servant assumes the obvious risks of the service into which he enters, even if the business be ever so dangerous, and if it might easily be conducted more safely by the employer.   This is implied in his voluntary undertaking, and it comes within a principle which has a much broader general application, and which is expressed in the maxim, *Volenti non fit injuria.*   The reason on which it is founded is, that, whatever may be the master's general duty to conduct his business safely in reference to persons who may be affected by it, he owes no legal duty in that respect to one who contracts to work in the business as it is.

In the present case, it does not appear that the steps were icy, or that there was any reason to suppose that the business involved a risk in regard to them, when the plaintiff entered the defendant's service.   It cannot be held that when she made her

contract she assumed the risk of such an injury as she afterwards received. We therefore come to the question whether, by her conduct since, she has assumed such a risk.

The doctrine, *Volenti non fit injuria*, has not been very much discussed in the cases in this Commonwealth, but it is well established in the law, and it has been repeatedly recognized by this court. *Horton* v. *Ipswich*, 12 Cush. 488. *Wilson* v. *Charlestown*, 8 Allen, 137. *Huddleston* v. *Lowell Machine Shop*, 106 Mass. 282. *Lovejoy* v. *Boston & Lowell Railroad*, 125 Mass. 79. *Yeaton* v. *Boston & Lowell Railroad*, 135 Mass. 418. *Scanlon* v. *Boston & Albany Railroad*, 147 Mass. 484. *Wood* v. *Locke*, 147 Mass. 604. *Mellor* v. *Merchants' Manuf. Co.* 150 Mass. 362. *Lewis* v. *New York & New England Railroad*, 153 Mass. 73. *Miner* v. *Connecticut River Railroad*, 153 Mass. 398. In England it has been much discussed, and the difficulties in the application of it have frequently been considered by the courts. The rule of law briefly stated is this. One who knows of a danger from the negligence of another, and understands and appreciates the risk therefrom, and voluntarily exposes himself to it, is precluded from recovering for an injury which results from the exposure. It has often been assumed that the conduct of the plaintiff in such a case shows conclusively that he is not in the exercise of due care. Sometimes it is said that the defendant no longer owes him any duty; sometimes, that the duty becomes one of imperfect obligation, and is not recognized in law. In one form or another the doctrine is given effect, as showing that in a case to which it applies there is either no negligence towards the plaintiff on the part of the defendant, or a want of due care on the part of the plaintiff.

In *Thomas* v. *Quartermaine*, 18 Q. B. D. 685, Bowen, L. J. says: "The duty of an occupier of premises which have an element of danger upon them reaches its vanishing point in the case of those who are cognizant of the full extent of the danger, and voluntarily run the risk." It would be unjust that one who freely and voluntarily assumes a known risk for which another is, in a general sense, culpably responsible, should hold that other responsible in damages for the consequences of his own exposure. In *Yarmouth* v. *France*, 19 Q. B. D. 647, Lord Esher, Master of the Rolls, expresses the opinion that in such a case

it is incorrect to say that the defendant no longer owes a duty to the plaintiff, but that it should rather be said that the duty is one of imperfect obligation, performance of which the law will not enforce.

It may be said that the voluntary conduct of the plaintiff in exposing himself to a known and appreciated risk is the interposition of an act which, as between the parties, makes the defendant's act, in its aspect as negligent, no longer the proximate cause of the injury; or at least is such participation in the defendant's conduct as to preclude the plaintiff from recovering on the ground of the defendant's negligence. Certainly it would be inconsistent to hold that a defendant's act is negligent in reference to the danger of injuring the plaintiff, and that the plaintiff is not negligent in voluntarily exposing himself when he understands the danger. It is to be remembered that, in determining whether a defendant is negligent in a given case, his duty to the plaintiff at the time is to be considered, and not his general duty, or his duty to others. Therefore, when it appears that a plaintiff has knowingly and voluntarily assumed the risk of an accident, the jury should be instructed that he cannot recover, and should not be permitted to consider the conduct of the defendant by itself, and find that it was negligent, and then consider the plaintiff's conduct by itself, and find that it was reasonably careful.

But this principle applies only when the plaintiff has voluntarily assumed the risk. As is said by Bowen, L. J., in *Thomas* v. *Quartermaine, ubi supra,* the maxim is not *Scienti non fit injuria,* but *Volenti non fit injuria.* The chief practical difficulty in applying it is in determining when the risk is assumed voluntarily. In the first place, one does not voluntarily assume a risk who merely knows that there is some danger, without appreciating the danger. On the other hand, he does not necessarily fail to appreciate the risk because he hopes and expects to encounter it without injury. If he comprehends the nature and the degree of the danger, and voluntarily takes his chance, he must abide the consequences, whether he is fortunate or unfortunate in the result of his venture. Sometimes the circumstances may show, as matter of law, that the risk is understood and appreciated; and often they may present in that particular a question of fact for the jury.

What constraint, exigency, or excuse will deprive an act of its voluntary character when one intentionally exposes himself to a known risk, is a question about which learned judges differ in opinion. It has been held by some, that where a man is not physically constrained, where he can take his option to do a thing or not to do it, and does it, he must be held to do it voluntarily. See opinion of Lord Bramwell in *Membery* v. *Great Western Railway*, 14 App. Cas. 179, and the dissenting opinion in *Eckert* v. *Long Island Railroad*, 43 N. Y. 502. But by the authorities generally one who in an exigency reluctantly determines to take a risk is not held so strictly. There has been much difference among the English judges in regard to the question whether a servant who discovers a defect in machinery, not existing when he entered the service, which the master is bound to repair, and who works on, understanding the danger, rather than to lose his place by complaining of it or refusing to work until it is repaired, shall be held to have voluntarily assumed the risk. In *Membery* v. *Great Western Railway, ubi supra*, Lord Bramwell expressed the opinion that the plaintiff cannot recover in such a case, while the Lord Chancellor and Lord Herschell, without expressing an opinion, prefer to keep the question open for future consideration. In *Thrussell* v. *Handyside*, 20 Q. B. D. 359, the Court of Queen's Bench held that a workman, by continuing to work under such circumstances, does not voluntarily assume the risk ; and in *Yarmouth* v. *France*, 19 Q. B. D. 647, a majority of the Court of Appeal were of the same opinion.

In *Sullivan* v. *India Manuf. Co.* 113 Mass. 396, is the following language : " Though it is a part of the implied contract between master and servant, (where there is only an implied contract,) that the master shall provide suitable instruments for the servant with which to do his work, and a suitable place where, when exercising due care himself, he may perform it with safety, or subject only to such hazards as are necessarily incident to the business, yet it is in the power of the servant to dispense with this obligation. When he assents therefore to occupy the place prepared for him, and incur the dangers to which he will be exposed thereby, having sufficient intelligence and knowledge to enable him to comprehend them, it

is not a question whether such place might, with reasonable care, and by a reasonable expense, have been made safe.   His assent has dispensed with the performance on the part of the master of the duty to make it so.   Having consented to serve in the way and manner in which the business was being conducted, he has no proper ground of complaint, even if reasonable precautions have been neglected." In *Goodnow* v. *Walpole Emery Mills*, 146 Mass. 261, it is said: " There was no danger which, in view of the plaintiff's knowledge and capacity, must not have been well understood by and apparent to him, and there was therefore no negligence on the part of the defendant in exposing him to it." In *Leary* v. *Boston & Albany Railroad*, 139 Mass. 580, Mr. Justice Devens uses these words: " But the servant assumes the dangers of the employment to which he voluntarily and intelligently consents, and, while ordinarily he is to be subjected only to the hazards necessarily incident to his employment, if he knows that proper precautions have been neglected, and still knowingly consents to incur the risk to which he will be exposed thereby, his assent dispenses with the duty of the master to take such precautions."

In this Commonwealth, as well as elsewhere, plaintiffs have been precluded from recovering, alike where their assumption of the risk grew out of an implied contract in reference to the condition of things at the time of entering the defendant's service, and where they voluntarily assumed a risk which came into existence afterwards.   *Huddleston* v. *Lowell Machine Shop*, 106 Mass. 282.   *Pingree* v. *Leyland*, 135 Mass. 398.   *Moulton* v. *Gage*, 138 Mass. 390.   *Taylor* v. *Carew Manuf. Co.* 140 Mass. 150.   *Gilbert* v. *Guild*, 144 Mass. 601.   *Murphy* v. *Greeley*, 146 Mass. 196.   *Wood* v. *Locke*, 147 Mass. 604.   *Mellor* v. *Merchants' Manuf. Co.* 150 Mass. 362.   *Lothrop* v. *Fitchburg Railroad*, 150 Mass. 423.   *Lewis* v. *New York & New England Railroad*, 153 Mass. 73.   *Miner* v. *Connecticut River Railroad*, 153 Mass. 398.

This court has recognized the doctrine that mere knowledge of a danger will not preclude a plaintiff from recovering unless he appreciates the risk.   *Linnehan* v. *Sampson*, 126 Mass. 506.   *Lawless* v. *Connecticut River Railroad*, 136 Mass. 1.   *Williams* v. *Churchill*, 137 Mass. 243.   *Taylor* v. *Carew Manuf. Co.* 140 Mass. 150.   *Ferren* v. *Old Colony Railroad*, 143 Mass. 197.   *Scanlon*

v. *Boston & Albany Railroad*, 147 Mass. 484. See also *Thomas* v. *Quartermaine*, 18 Q. B. D. 685, and *Yarmouth* v. *France*, 19 Q. B. D. 647. Many other cases in which the plaintiff has not been precluded from recovering may be referred to this principle, and some of them more properly rest on the ground that there were such considerations of duty or exigency affecting him as to present a question whether the assumption of the risk was voluntary, or under an exigency which justified his action, and induced him unwillingly to encounter a danger to which he was wrongfully exposed. *Thomas* v. *Western Union Telegraph Co.* 100 Mass. 156. *Mahoney* v. *Metropolitan Railroad*, 104 Mass. 73. *Lyman* v. *Amherst*, 107 Mass. 339. *Looney* v. *McLean*, 129 Mass. 33. *Dewire* v. *Bailey*, 131 Mass. 169. *Gilbert* v. *Boston*, 139 Mass. 313. *Pomeroy* v. *Westfield*, 154 Mass. 462. *Eckert* v. *Long Island Railroad*, 43 N. Y. 502. Whether the fear of losing one's situation would constitute such an exigency, where the place had become dangerous by reason of the negligence of the employer to repair it, especially if notice of the danger had been given by the servant, and there had been a promise speedily to repair it, we need not decide in this case. See *Leary* v. *Boston & Albany Railroad*, 139 Mass. 580 ; *Haley* v. *Case*, 142 Mass. 316 ; *Wescott* v. *New York & New England Railroad*, 153 Mass. 460.

We are of opinion that it cannot be said, as matter of law, that the plaintiff in the present case, in attempting to go down the steps, voluntarily assumed a risk which she understood and appreciated, and which resulted in the accident. She knew that the steps were icy, and that there was some danger in passing over them. But the evidence tended to show that their condition in regard to slipperiness was constantly changing in different states of the weather, with the spray falling daily from the steam-pipe and freezing upon them. Common experience tells us that the degree of slipperiness of ice is not always determinable from an ocular inspection of it. If it were certain that the extent of the danger was obvious to one who saw the surface of the steps, the case would be different.

Besides, there was evidence tending to show that she had no way of leaving the defendant's mill except by going down the steps, and that was important to be considered in deciding whether she took the risk voluntarily.

*Osborne* v. *London & North Western Railway*, 21 Q. B. D. 220, a case in which the plaintiff sued to recover for an injury received in going down some icy stone steps, is precisely in point. It is said in the opinion, referring to the language of the justices in *Yarmouth* v. *France*, and *Thomas* v. *Quartermaine, ubi supra:* " Those observations go far to make it hard for a defendant to succeed on·such a defence as that relied on here, for it is probable that juries would often find for plaintiffs on the ground that they had not full knowledge of the nature and extent of the risk, but that cannot be helped. These judgments introduce an important qualification of the maxim ' *Volenti non fit injuria.*' In the present case the plaintiff may well have misapprehended the extent of the difficulty and danger which he would encounter in descending the steps; for instance, he might easily be deceived as to the condition of the snow."

We are of opinion that the case should have been submitted to the jury. *Exceptions sustained.*