## DELIA BELL *vs*. JOHN K. WHITING.

Norfolk.   January 19, 1921. — March 3, 1921.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & JENNEY, JJ.

*Negligence*, Employer's liability: defective implement in house laundry, Assumption of risk.

At the trial of an action of tort for personal injuries received by the plaintiff when employed as a laundress in the home of the defendant and caused by the sticking into her finger of a nail which protruded downward from one quarter to three eighths of an inch from the back of a hand wash-board, there was evidence tending to show that the defective condition of the wash-board arose after the plaintiff was employed by the defendant and was due to its natural disintegration through years of constant use or to the manner and method used by some unknown person to repair it; that some months before the plaintiff's injury the fact that the board was in a worn out condition was called directly to the attention of the defendant's wife, who had charge of the house for the defendant, and that an examination of it then would have disclosed the protruding nail; that the plaintiff never had examined the bottom of the board and "thought it was all right." *Held*, that

(1) A finding was warranted that, even if the protrusion of the nail was obvious, the plaintiff did not appreciate its danger and that she had not assumed the risk of her injury;

(2) A finding was warranted that the plaintiff was in the exercise of due care;

(3) A finding was warranted that the defendant was negligent.

TORT for personal injuries alleged to have been received by the plaintiff while employed by the defendant as a laundress at his home and to have been caused by a nail protruding from the back of a wash-board.   Writ dated February 8, 1917.

In the Superior Court, the action was tried before *J. F. Brown*, J. Material evidence is described in the opinion.   At the close of the evidence, the defendant moved that a verdict be ordered for him. The motion was denied.   The jury found for the plaintiff in the sum of $1,500; and the defendant alleged exceptions.

*H. S. Avery*, (*C. S. Knowles* with him,) for the defendant.

*James J. McCarthy*, for the plaintiff.

PIERCE, J.   The case is before this court on exceptions taken to the refusal of the judge to order a verdict for the defendant.

The facts as they appear from the plaintiff's evidence may be briefly stated as follows:

Working as a laundress two days in each week during the fall, winter and spring, the plaintiff had been in the employ of the defendant from October, 1914, until the day of her accident, January 11, 1916. The defendant's wife had charge of the house where the work of the plaintiff was done; she represented him there; she had full authority to act for him in every respect and everything she did was with the sanction and approval of the defendant including the hiring of help and the furnishing of supplies, equipment and tools. When the plaintiff first went to work there were in the laundry two wash-boards, a large one and a smaller one. She always used the larger one. That board was a board with only one side of zinc with a piece of board above the zinc to put soap on. Above the zinc which was used in rubbing there was a piece of board about five inches long that was fastened to and in the middle of the soap board. It stood up from the soap board about the height of the thickness of a cake of soap. It was different in that respect from the ordinary board where the place for the soap was let in and ran the entire width of the board. On the back of the board about three inches below the top there was a piece of board about an inch thick, which looked as if it was a piece that belonged with the board when the board was made. The wash-board had been in use since 1910; had never been inspected or examined by the defendant or his wife since it was bought and there was evidence that the life of such a board was about four or five years. When the plaintiff started to work the wash-board "seemed to be all right only that piece that held the soap was kind of broken off. It was a little bit broken; . . . it kept breaking off on the sides, crumbling off, but it would still hold the soap." The wash-board was used in that condition during the winter of 1914 and 1915. In October, 1915, after the family of the defendant had returned from their summer home, in the laundry the plaintiff said to the wife of the defendant "Mrs. Whiting, you need two wash-boards. Those are pretty badly used up, I don't think they are fit for use any more." Mrs. Whiting said nothing and did not examine them. The plaintiff thereafter continued to work with the same board up to the date of the injury. On the day preceding the accident after her washing she left the board in the tub

where it stood during the night and the day following up to the time she was cleaning up in the afternoon. She went to thè tub to put the board away. She caught hold of it with her forefinger under the back of the board and her thumb over the top of the board. As soon as she took hold of the board a nail stuck in the first finger of her right hand. An examination of the board disclosed to her two rusty iron nails with sharp points which came out pointing downward underneath the piece of board above described on the back of the wash-board. They were each about two inches in from the sides of the wash-board, one on each side, they pointed straight down, not obliquely, about one quarter to three eighths of an inch and there was a space between the nails and the rest of the wash-board. There was further testimony that the nails would not be seen very well unless an examination was made of the board and that they were "not put there in the process of manufacture," that they were "driven in there to support the broken soap board," that they "had been there not over a year and that such nail must have been driven in there by somebody" and might have been there six months before the board was discarded immediately after the accident.

On the foregoing facts the jury could warrantably find that the specific defect in the wash-board to which the injury to the plaintiff was indisputably to be attributed, came into existence at a time subsequent to the employment of the plaintiff and arose out of the natural disintegration of the wash-board through years of constant use, or was due to the manner and method some unknown person adopted to repair the board which was designed to hold the soap.

The jury also warrantably could find that the plaintiff did not assume the risk of the condition of the board subsequent to her employment if they believed her testimony that she never examined the back and "thought it was all right" even if they should find that the protrusion of the nails was obvious. *Fitzgerald* v. *Connecticut River Paper Co.* 155 Mass. 155, 161, and cases cited.

The jury also could find rightly that the plaintiff was in the exercise of due care. As regards the negligence of the defendant, the evidence warranted a finding that the wife of the defendant had had her attention directly called to the worn out condition of the wash-board some months before the accident, and they so

finding could further find upon the testimony that an examination of the board at that time would have disclosed the existence and protrusion of the nails, one of which pierced the finger of the plaintiff and caused the severe injury that followed.

*Exceptions overruled.*