MINNIE W. SHIPP, administratrix, *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.    March 10, 1932. — June 26, 1933.

Present: RUGG, C.J., CROSBY, WAIT, & FIELD, JJ.

*Negligence*, Employer's liability, Res ipsa loquitur.

At the trial of an action by an administrator against a railroad corporation, under the Federal employers' liability act, for the death of the plaintiff's intestate, there was evidence that the intestate was a foreman in charge of men straightening a heavy signal pole of the defendant; that the straightening was done by means of digging around the base of the pole and then pulling on the pole with a rope and pulley blocks; that, after several pulls on the rope, the hook at

the end of one of the blocks opened or straightened, releasing the block, which struck the intestate; that the intestate selected the gear to be used on the job, but that there were no stronger blocks in the supply of tools available for use; that the hook in question had been used previously for straightening poles; and that one of the workmen said to the intestate that he was "using pretty light blocks for this kind of work," and asked him if he did not think that he ought to have bigger ones. There was no specific evidence that the hook was defective, nor evidence that the manner of its use should have been anticipated by the defendant, nor evidence, apart from testimony as to the weight of the pole and the strength of a similar hook upon a test, to show the force and strength of hook required to straighten the pole by the method used. The plaintiff relied solely upon the defendant's negligence in furnishing a block with a defective hook and in failing to furnish a block with a hook sufficient for the purpose for which it was used. *Held,* that

(1) It could not have been ruled as matter of law that the plaintiff was precluded from recovery on the ground that the intestate selected a defective or otherwise insufficient appliance from an adequate supply of sufficient appliances;

(2) A finding was not warranted that the defendant was negligent in furnishing a block with a defective hook, even disregarding testimony by a witness for the defendant that the hook was a very good one and free of defects: neither with nor without this testimony did the mere fact that the hook opened out warrant a finding that it was defective;

(3) The defendant was not liable under the doctrine of *res ipsa loquitur;*

(4) A finding was not warranted that the defendant was negligent in failing to use reasonable care to supply a hook reasonably safe for the purpose for which it was used;

(5) The plaintiff could not recover.

.

TORT. Writ dated May 19, 1928.

The action was tried in the Superior Court before *Pinanski,* J. Material evidence is stated in the opinion. There was a verdict for the plaintiff in the sum of $8,708. The defendant alleged exceptions.

*J. M. Maloney,* (*M. J. Cohen* with him,) for the defendant.

*F. Juggins & G. Alpert,* for the plaintiff, submitted a brief.

FIELD, J. This action of tort was brought by the administratrix of the estate of James Harvey Shipp, to recover damages for his death. Other counts in the declaration were waived and the case was tried on a count under the Federal employers' liability act, 35 U. S. Sts. at Large, 65, § 1, alleging that "the plaintiff's intestate was seriously

injured by reason of defects or insufficiencies, due to the defendant's negligence in its appliances, machinery, works, and equipment, which caused in whole or in part the death of the plaintiff's intestate." The defendant's motion for a directed verdict was denied and there was a verdict for the plaintiff. The defendant's exceptions to the denial of its motion, the refusal to rule as requested, parts of the charge and the admission of evidence bring the case before us.

Section 1 of the Federal employers' liability act provides that a common carrier by railroad while engaged in interstate commerce "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

It is undisputed that on June 6, 1927, the plaintiff's intestate was employed by the defendant, that the defendant was a common carrier by railroad engaged in interstate commerce, that the deceased was injured while engaged in such commerce, that he died on December 3, 1927, being survived by the plaintiff, his widow, and a minor son, George M. Shipp, that the widow was duly appointed administratrix of her husband's estate, and that she and the minor son were entirely dependent upon the deceased. There was evidence that his death resulted from the injury.

The deceased was a "gang foreman" in charge of repair work on signals on the Salem division of the defendant's railroad. On the day he was injured he, with four other men, was engaged in straightening a signal. The signal, which extended about thirty feet above the ground, consisted of a cement base, weighing about six thousand pounds, set in the ground about four and one half feet, a box on top of the base about eight feet high, containing the machinery

operating the signal, and a pole or mast fastened to the box and extending upward therefrom about twenty-two feet. The box and mast weighed about fifteen hundred pounds.

The men dug around the base of the signal. A rope was then put around the mast near the top of the box. A pulley block with a hook at one end was attached to the rope by the hook, and another pulley block was attached to a rope around one of the rails in a similar manner. A rope running through the blocks was fastened at one end to a rail and three of the men including the deceased, at his direction, pulled on the other end of the rope. Whenever they ceased to pull a fourth man would "snub" the rope around another rail to hold what had been gained. The fifth man stood on the box with a level to see when the pole became plumb. On the third or fourth pull the hook which attached the block to the rope around the mast gave way or straightened and the block, being thus released, snapped back and struck the deceased on the head, injuring him.

Upon a motion for specifications or statement of particulars (G. L. [Ter. Ed.] c. 231, § 70) the plaintiff specified that the negligence of the defendant, its agents, servants or employees consisted "In furnishing defective paraphernalia for plumbing the signals, which resulted in the hook bending or giving away under strain," that the alleged defect or insufficiency in the defendant's appliances, machinery, works and equipment was that "The hook was not strong enough for the contemplated work and was defective in that the materials and method used in its construction were not proper," and that the alleged defect, insufficiency or negligence of the defendant, its agents, servants, or employees was that "The defect was inherent in the hook, which was a part of the pulley, and the insufficiency was the failure to supply a hook adequate to do the work contemplated."

The motion for a directed verdict was based on the following grounds: (1) "Because there is not sufficient evidence to justify a finding that the defendant, its agents or servants was negligent," (2) "Because there is not sufficient evidence to warrant a finding that there was any defect in

the equipment of the defendant or that it was insufficient," (3) "Because on all the evidence the plaintiff's intestate assumed the risk of injury," (4) "Because on all the evidence the plaintiff's intestate's injury was caused through his sole negligence," and (5) "Because there is no pecuniary loss alleged to the plaintiff's intestate's widow and son, George, within the meaning of the law."

This motion should have been allowed on the first and second grounds.

Apart from matters of procedure not affecting substantive rights (*Lee* v. *Central of Georgia Railway*, 252 U. S. 109, 110), the "case is governed by the Act and the applicable principles of common law as established and applied in federal courts." *Missouri Pacific Railroad* v. *Aeby*, 275 U. S. 426, 429. According to these principles the defendant was not "held to an absolute responsibility for the reasonably safe condition of the place, tools and appliances, but only to the duty of exercising reasonable care to that end." *Baltimore & Ohio Southwestern Railroad* v. *Carroll*, 280 U. S. 491, 496. It was liable for "death resulting in whole or in part from the negligence specified in the Act; and proof of such negligence is essential to recovery" and the "kind or amount of evidence required to establish it is not subject to the control of the several States." *Chicago, Milwaukee & St. Paul Railway* v. *Coogan*, 271 U. S. 472, 474. The rule applied in the Federal courts is that the "credibility of witnesses, the weight and probative value of evidence are to be determined by the jury and not by the judge. However, . . . in every case, it is the duty of the judge to direct a verdict in favor of one of the parties when the testimony and all the inferences which the jury could justifiably draw therefrom would be insufficient to support a different finding." *Baltimore & Ohio Railroad* v. *Groeger*, 266 U. S. 521, 524. But "that the question of the credibility of witnesses is one for the jury alone . . . does not mean that the jury is at liberty, under the guise of passing upon the credibility of a witness, to disregard his testimony, when from no reasonable point of view is it open to doubt." *Chesapeake & Ohio Railway* v. *Martin*,

283 U. S. 209, 216. See also *Pennsylvania Railroad* v. *Chamberlain*, 288 U. S. 333, 343.

The plaintiff relies solely upon the defendant's negligence in furnishing a block with a defective hook and in failing to furnish a block with a hook sufficient for the purpose for which it was used — negligence which falls within the specifications. There was no evidence that the defendant furnished any other "defective paraphernalia for plumbing the signals."

According to uncontradicted evidence the appliances furnished by the defendant for use in straightening signals were kept in a box in the tool car at the Salem station which was moved only for heavy jobs and, on the occasion in question, the specific blocks to be used were taken from this box under instructions from the deceased and were carried on a gasoline motor car to the place where the signal to be straightened was located. The evidence, however, was conflicting as to whether there were any stronger blocks in the box. For this reason, if not for other reasons which need not be discussed, it could not have been ruled as matter of law that the plaintiff was precluded from recovery on the ground that the deceased selected a defective or otherwise insufficient appliance from an adequate supply of sufficient appliances. Compare *Haskell* v. *Cape Ann Anchor Works*, 178 Mass. 485, 486–487.

The evidence did not warrant a finding that the defendant was negligent in furnishing a block with a defective hook. The hook did not break. In the aspect of the evidence most favorable to the plaintiff it "opened out" or straightened so that it slipped off the rope. The hook was produced in court at the trial and disclosed no defect and there was no testimony that it was defective. On the other hand, there was testimony of a witness, called by the defendant, which was in no respect impeached, contradicted, suspicious or inherently improbable (see *Chesapeake & Ohio Railway* v. *Martin*, 283 U. S. 209, 214), that he was the assistant superintendent of the company which made the hook, that it was nine sixteenths of an inch in diameter, drop-forged, bent by machinery, and made of the best qual-

ity of steel for a hook — twenty to thirty per cent carbon — that it would be considered a very good hook, and that if there was any defect in it it would break under strain, but if it opened out that fact showed merely that a strain was put upon it which was in excess of its carrying capacity. Neither with nor without this testimony did the mere fact that the hook opened out warrant a finding that it was defective, nor did this fact together with the evidence, somewhat general in character, that the hook had been used previously in straightening signals, warrant a finding that it had been weakened by such previous use. The opening out of the hook was at least equally consistent with its being perfect of its kind and size, but, though in perfect condition, insufficient in strength, because too light or for some other reason, to stand the strain actually put upon it. *Burnett* v. *Pennsylvania Railroad*, 33 Fed. Rep. (2d) 579, 580. See also *Patton* v. *Texas & Pacific Railway*, 179 U. S. 658, 663, 665; *Looney* v. *Metropolitan Railroad*, 200 U. S. 480. There was an absence of such evidence of a defect as has been held, in cases relied on by the plaintiff, where the law of this Commonwealth was applied, to be sufficient to take a case to the jury. See *Donahue* v. *C. H. Buck & Co.* 197 Mass. 550; *Doherty* v. *Booth*, 200 Mass. 522; *Golden* v. *Mannex*, 214 Mass. 502. Since it could not have been found that the hook was defective, obviously it could not have been found that the defendant knew, or ought to have known, that it was defective.

Nor did the evidence warrant a finding that the defendant, in furnishing the block with a hook for use in straightening signals, failed to use reasonable care to supply a hook reasonably safe for the purpose.

For support of such a finding the plaintiff relies upon the fact, which could have been found, that the hook opened out under the strain to which it was subjected. She relies, in substance, on the doctrine *res ipsa loquitur*. But whatever may be the applicability of this doctrine under some conditions (see *Great Northern Railway* v. *Wiles*, 240 U. S. 444, 448; *Minneapolis & St. Louis Railroad* v. *Gotschall*, 244 U. S. 66), this is not a case where negligence of the

defendant can be inferred from "the circumstances of the occurrence that has caused the injury." See *Sweeney* v. *Erving,* 228 U. S. 233, 238. Doubtless the opening of the hook, unexplained, speaks to the effect that it was not strong enough to stand the strain actually put upon it, but the opening out of the hook does not speak to the effect that the defendant was negligent unless it appears also that the hook was used in a manner which was or should have been anticipated by the defendant and that the defendant did not use reasonable care to supply a hook reasonably safe for use in such a manner. See *Felch* v. *Allen,* 98 Mass. 572, 575; *Murphy* v. *Greeley,* 146 Mass. 196, 200; *McLean* v. *Cole,* 175 Mass. 5, 7; *McDonnell* v. *New York, New Haven & Hartford Railroad,* 192 Mass. 538, 542; *Morena* v. *Winston,* 194 Mass. 378, 384; *Sanders* v. *New York Central & Hudson River Railroad,* 212 Mass. 269, 271.

It could not have been found that the hook was used in a manner which was or should have been anticipated by the defendant. The manner of its use was in most respects undisputed. It was undisputed that the men, under the direction of the deceased, dug to the bottom of the base of the signal on the back side of it, about two or two and one half feet deep at its front and about two feet deep at the sides, and that the signal was to be pulled to the front. It did not appear that any person other than the deceased exercised any control of the depth to which the men should dig. There was no evidence that it was or should have been anticipated that this method of straightening signals would be used. It did not appear that it was a proper or usual method, that this method had ever been used on the defendant's railroad, either with or without the defendant's knowledge, or that the defendant ordered or intended that this method should be used. It is matter of common knowledge that digging deeper around the base of the signal would have made it easier to straighten the signal. And there was testimony to this effect. But there was nothing in the evidence to indicate that it was or should have been anticipated that the deceased and the other men would

attempt to straighten the signal without wholly freeing its base from the earth or at least freeing it to a greater extent than was done in this case.  With respect, however, to the manner by which force was applied to the rope, the evidence was sufficiently favorable to the plaintiff, for it could have been found that the men merely pulled upon it, though there was evidence, which might have been disbelieved, that they walked or jumped upon it at the direction of the deceased.  Furthermore, the opening out of the hook when used in the manner described had no tendency to show that the defendant did not use reasonable care to supply a hook reasonably safe for use in a manner which was or should have been anticipated by the defendant.

Nor was there other evidence which, taken in connection with the evidence that the hook opened out, warranted a finding that the hook was not reasonably safe for use in straightening signals, or that the defendant did not use reasonable care to supply a hook which was reasonably safe for such use.  There was no such obvious disparity between the strength of the hook and the force required to straighten the signal as to justify such findings on the basis of common knowledge.  There was no specific evidence — apart from the weight of the signal — of the force, and consequent strength of the hook, required to straighten the signal if its base was wholly freed from the earth or if it was straightened in a manner which was or should have been anticipated.  The only specific evidence of the strength of the hook came from the defendant's witness, previously referred to, who testified to the quality of the hook as already stated, and also testified that "on testing by machine a similar sized hook it started to open at fifteen hundred pounds and the highest test he got on it at any point was twenty nine hundred seventy pounds."  It did not appear, and could not have been inferred, that a hook of this strength was not strong enough for the work if the work was performed in a manner which was or should have been anticipated or, if in fact it was not strong enough, that the defendant knew or ought to have known that it was not.  The fact, which could have been found on con-

flicting evidence, that the hook had not been used previously for straightening signals, and the testimony that one of the men told the deceased that he was "using pretty light blocks for this kind of work" and asked him if he did not think he ought to have bigger ones, do not supply the essentials of proof that the hook was of insufficient strength for use in a manner which was or should nave been anticipated, and that the defendant failed to use reasonable care to provide a hook of sufficient strength for such use.

Since a verdict for the defendant should have been directed on the first and second grounds of the motion for a directed verdict it is not necessary to consider the other grounds stated therein or the questions raised by the defendant's exceptions to the admission of evidence, the judge's refusal to rule as requested, and his charge to the jury. See *Crowe* v. *Boston & Maine Railroad*, 242 Mass. 389, 395.

*Exceptions sustained.*
*Judgment for the defendant.*