# Edwin A. Richardson v. Anglo-American Provision Co.

1.  MASTER AND SERVANT—*Limitations on Duty of Master to Provide for Safety of Employes.*—A building while in course of construction undergoes constant changes and passes through successive temporary conditions, many of which must from the very necessity of construction be dangerous, and the obligation of a master to furnish reasonably safe places and structures for his servants to work upon, does not impose upon him the duty of keeping a building which they are employed in erecting in a safe condition at every moment of their work. The hazard of working upon such a building should be held to be an ordinary hazard, incident to the employment, and hence assumed by the employe.

Trespass on the Case, for personal injuries.    Appeal from the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the March term, 1897.    Affirmed.    Opinion filed October 11, 1897.

HOLLETT & TINSMAN, attorneys for appellant.

WALKER & EDDY, attorneys for appellee.

MR. JUSTICE SEARS DELIVERED THE OPINION OF THE COURT.

On the 14th day of March, A. D. 1891, the Anglo-American Provision Company, appellee, was engaged in altering a building at the Union Stock Yards, Chicago, which was owned and used by it as a packing-house. Edwin A. Richardson, appellant, was working on this building as a carpenter in the employ of appellee, under direction of the foreman who had charge of the construction and alteration of the building.

The building was a large, five-story structure, and the alterations consisted in raising the ceiling of each story and adding an additional story at the top. Appellant, with other carpenters, was engaged in constructing an addition upon the top, which ran from the east end or front of the building to the west end, midway between the sides. This was called the "lookout."

The evidence presented by appellant would show that on the morning in question appellant with others was directed by the foreman to finish the south side of this "lookout." That the boards forming the roof of the main building were all laid and in place. That they were all properly nailed to the roof joists with the exception of three or four boards adjoining the southeast corner of the space where the lookout was to be erected. That these three or four boards were laid in place up against each other in the same manner as the balance of the roof, but that the men who laid them had failed to nail them down. The appellant had had nothing to do with the laying of the roof boards, which was done by other carpenters under the same foreman. That appellant heard them nailing down the roof

boards the day before the accident while he was working upon the lookout. That the foreman gave appellant no notice that the roof boards near the corner of the space where the lookout was to be erected were not nailed, and appellant did not know of this condition; nor is there any evidence that the foreman or appellee knew of it; that appellant walked to where the studs were lying and picked one up, and proceeded with it along and upon the main roof towards the southeast corner of the open space for the lookout; that as he came up to the corner he stooped down with the piece of studding in his hand for the purpose of marking the stud, and preparing it to form the corner stud of the lookout; that as he was in the act of stooping down the board tilted up, because it was not nailed, and he fell over the front of the building, a distance of about fifty feet, struck upon the roof of a shed, and sustained injuries. To recover damages for such injuries this suit was brought.

Upon the conclusion of the evidence for appellant the trial court directed a verdict for appellee.

The only question here presented is whether the evidence warranted submission to a jury and a verdict for appellant, if one were found. The jury could have found from the evidence that the roof boards in question were left unnailed, and that said condition was the cause of the accident. Whether appellant was in the exercise of ordinary care was a question for the jury. So that the consideration is narrowed to one question, viz.: Was the condition of the roof boards in violation of any duty which the law imposed upon appellee? We think not.

The doctrine contended for by counsel for appellant is settled beyond possible question as applied to machinery, structures or places *provided* by the employer for the use of his employe. But the rule can not, we think, be reasonably extended to cover portions of an incomplete building in process of construction. That it does apply to scaffolding, furnished by the employer for brief use only, is true; and the rule is often announced as covering "surroundings," viz.: the master is obligated to provide reasonably safe

surroundings; but it does not seem logical or just to give
to the term an interpretation broad enough to cover por-
tions of the building itself while in course of construction,
and while undergoing constant changes and passing through·
successive temporary conditions, many of which must, from
the very necessity of construction, be dangerous. The
hazard involved in working upon a building during such
changes of condition should, it would seem, be held to be
an ordinary hazard, incident to the employment and hence
assumed by the employe.

The decision in Armour v. Hahn, 111 U. S. 313, reaches
this conclusion of non-liability, although partly by different
reasoning, viz., the application of the rule as to negligence
of fellow-servants. The court say:

" There was no evidence tending to prove any negligence
on the part of the firm of which the defendant was a mem-
ber, or of their superintendent or of the foreman of the
gang of carpenters. The obligation of a master to provide
reasonably safe places and structures for his servants to
work upon does not impose upon him the duty, as toward
them, of keeping a building which they are employed in
erecting in a safe condition at every moment of their work,
so far as its safety depends upon the due performance of
that work by them and their fellows. The plaintiff was
not a minor, employed in work which was strange to him,
but was a man of full age, engaged in ordinary work of his
trade as a carpenter. The evidence tended to show that he
and one of his comrades were directed by their foreman to
push the joist out on the projecting sticks of timber, not
that he told them to go out themselves. The projecting
timber upon which the plaintiff placed his foot was inserted
in a wall which was in the course of being built, and which
at the time had been bricked up only so far as to be on a
level with the upper surface of the timber. The usual
course, as the plaintiff himself testified, was to put the
timber in, and leave it in that way temporarily, and after-
ward build the wall up over it. It is not pretended that
the stick of timber was in itself unsound or unsuitable for

its purpose. If it was at the time insecure, it was either by reason of the risks ordinarily incident to the state of things in the unfinished condition of the building, or else by reason of some negligence of one of the carpenters or bricklayers, all of whom were employed and paid by the same master, and were working in the course of their employment at the same place and time, with an immediate common object, the erection of the building, and, therefore, within the strictest limits of the rule of law upon the subject, fellow-servants, one of whom can not maintain an action for injuries caused by the negligence of another against their common master."

That the employer can not, in reason, be bound to warn employes of such transitory risks, is held in McCann v. Kennedy, 167 Mass. 23; see also Vol. II, Bailey's Personal Inj. relating to Master and Servant, 3024-5, p. 1021.

That a like rule applies when a building is in process of tearing down, see Clark v. Liston, 54 Ill. App. 578.

The trial court therefore did not err in directing a verdict for appellee.

Judgment affirmed.

Mr. Justice WINDES takes no part in the decision of this case.