## Walter Merchant v. Matti Mickelson.

1. MASTER AND SERVANT—*Application of the Rule Requiring the Master to Furnish a Safe Place for His Servant to Work.*—The rule that a master must furnish his servant a safe place in which to perform his services, is not applicable when the servant is employed to take down a building.

2. SAME—*Failure to Remove Nails from Partially Burned Timbers is Not Negligence.*—The failure of a contractor, before attempting the removal of material in tearing down a building, to clean it up by removing the nails from partially burned timbers or permit it to be done by those in his employ, is not negligence as a matter of law.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1901. Reversed. Opinion filed March 31, 1902.

**Statement.**—This is an appeal from a judgment rendered in favor of appellee and against appellant, in an action for injuries caused, as is alleged, by appellant's negligence. The defendant, at the close of all the evidence, requested the court to instruct the jury to find the defend-

ant not guilty, which instruction the court refused to give. The question to be decided is whether the evidence warrants a recovery. The evidence is that Merchant, the defendant, was engaged in the performance of a contract for tearing down and removing a large brick building known as number 44 South Jefferson street, in the city of Chicago. The building was about five or six stories high. There had been a fire in it, and some of the timbers were partly burned and were charred. The plaintiff was not employed when the contractor commenced to tear down the building, but, as he himself testified, after the work of tearing down, which was commenced on top, had proceeded to the fourth or fifth floor, and three or four days before the accident hereinafter mentioned. The defendant, Merchant, testified without contradiction, that when he employed the plaintiff he asked him if he was used to that kind of work; informed him that it was a dangerous job, and told him that he did not want any one to work at it unless he was familiar with such work, and that plaintiff said he was used to that kind of work. It appears from plaintiff's testimony that he had, before his employment by defendant, worked at wrecking or tearing down buildings, and that after his employment by defendant, and for three or four days before the accident, he had carried out timbers from the building every day. There is no evidence tending to prove, nor is it claimed, that plaintiff was inexperienced in the work which he was employed by the defendant to do.

February 21, 1899, about three o'clock P. M., the plaintiff was called on to assist in rolling a timber then on the third floor of the building to a wall next to the alley, for the purpose of precipitating it into the alley below, a distance of about thirty-five feet from the top of the wall. The plaintiff testified that timbers which had been taken from the fourth floor was piled on the third floor. The evidence tends to prove that, for the safety of the men engaged in the work, and the people in the adjoining buildings, it was necessary to relieve the floor of the superincumbent weight

of timbers which had been lowered to it from the higher stories, as soon as practicable.

James McClusky, witness for plaintiff, testified that it (the building) was a factory and had been burned down, and some of the timbers were pretty badly charred; that some of the floors were pretty dangerous to work on, and that the safest way was to clear the floors as quickly as possible, and not to keep the men hanging around on them longer than necessary. Lane, another of plaintiff's witnesses, testified that the building had been burned, and they were taking it down because it was dangerous; that it was a burned building and very dangerous to work on; that it was more dangerous, by reason of having been burned; and that he understood that if a great number of men and timbers were on the floor, the whole thing might go down, floor and all.

The evidence tends to prove that the timber which plaintiff assisted to move was twelve by sixteen inches and about eighteen or twenty feet in length. Plaintiff testified that it had a row of nails all along one side, and only a few on the other side, and that the nails stuck out from the timber about one and one-half inch; that when he came to the place where the timber was, it was lying close to the alley (meaning the wall adjoining the alley), one end of it being about five feet and the other a little less away; that he, plaintiff, took a pick and tried to drive the nails out of the timber; but the foreman stopped him and said there was not time to do that, and told the men to take hold of the timber and roll it down. This part of plaintiff's testimony is corroborated by another witness. There were six men, including the plaintiff, engaged in rolling the timber toward the wall, the plaintiff being near one end of it. The men rolled it with their hands. The evidence tends to prove that there was a star anchor in the center of the wall, toward which the timber was rolled, and that the wall was a little higher at that point than elsewhere; that elsewhere it was almost, if not quite, on a level with the floor, and when the timber reached the wall it was lifted onto the

higher place and, in rolling it off, one end raised up and caught the plaintiff and he went off the wall with the timber and fell thirty-five feet into the alley, and the evidence tends to prove that his arm was permanently injured. The timber, fortunately, did not fall on him. The evidence tends to prove that his jacket or blouse, which he wore loose on him, was caught on one of the nails, although the evidence to that effect is very slender.

A number of witnesses who had had experience in wrecking buildings, testified that they had never known, in their experience, of nails being taken out of the material of a building which was being torn down, or of the material being cleaned up before it was removed from the building, and one witness of large experience in such work, testified that if one stopped to clean the material while taking down a building, it would take longer to take it down than to build it.

ALEXANDER CLARK, attorney for appellant.

JOHN H. HILL, attorney for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

The doctrine that the master must furnish to his servants a safe place in which to work, is not applicable when the servant is employed to take down a building, which work is necessarily dangerous, especially in such case as the present, where the building has been partially destroyed by fire, and therefore what remains of it, weakened. Clark et al. v. Liston, 54 Ill. App. 578; Mueller v. Schwecht, 62 Ib. 622; Richardson v. Anglo-Am. Provision Co., 72 Ib. 77; Chicago Edison Co. v. Davis, 93 Ib. 284; Armour v. Hahn, 111 U. S. 313.

In Clark v. Liston, *supra*, the court say:

" It is manifest that in the destruction of a building there is not an attempt or obligation to make it or any part thereof secure; on the contrary, the work of removal is one in which, in turn, each part of the structure is rendered insecure."

In Mueller v. Schwecht, *supra*, the court say :

" The verdict is upon the theory that, in tearing down a building there is a duty to anticipate and guard against the dangers to which others there may be exposed.   We have not so understood the law."

In Richardson v. Anglo-Am. Co., *supra*, a building was being altered.   The plaintiff was a laborer employed in the work and was injured while so employed.   The court say :

" The hazard involved in working on a building during such changes of condition should, it would seem, be held to be an ordinary hazard incidental to the employment, and hence assumed by the employe."

Plaintiff had had, when employed by defendant, experience in taking down buildings; he must·have known that such work was dangerous; he was specially informed that it was so, and that defendant would not employ any one unfamiliar with the work, and plaintiff said he was used to the work, and engaged in it, thus assuming all risks incident to it.   The negligence relied. on. is the failure of the defendant to cause the nails to be removed from the burned and charred timber, and his refusal to permit the plaintiff to take time to remove them, thus temporarily stopping the work, and the question is, whether this was negligence on the part of the defendant.   We think it unreasonable to hold that in tearing down a building  the contractor must, before attempting to remove the material, clean it up and remove nails from it, or permit those employed by him in the work to do so, and we can not perceive how fair-minded, reasonable men could come to any other reasonable conclusion.   We therefore hold, as matter of law, that the failure of the defendant to remove the nails, or to permit the plaintiff to occupy his time in removing them, was not negligence, and will not support a recovery.   Compliance with a contrary rule would be impracticable, if not impossible. It would seem from the plaintiff's own testimony that he did not consider the projecting nails very dangerous.   He testified that he wanted them driven out because they were dangerous and hard to handle, and that they might tear his

clothes. No reasonable man could have anticipated, as we think, that they would be the means of throwing any one from the wall.

We are of opinion that the court erred in refusing to direct a verdict for the defendant. The judgment will be reversed.