115    209
a214s   399

## Hansell-Elcock Foundry Company v. James K. Clark.

### Gen. No. 11,467.

1. AMENDED DECLARATION—*when not error to permit filing of, after verdict.* Such action upon the part of the court is not error where the amended declaration merely represents an excess of caution upon the part of plaintiff's attorneys—the declaration upon which the case was tried being sufficient in itself to support a recovery.

2. INJURY—*when allegation with respect to, is sufficient.* It is enough that the declaration show the injury received without describing it in all its seriousness.

3. INSTRUCTION—*when improper reference to declaration not reversible error.* While it is improper to refer to a declaration which has been superseded by an amended one, yet such reference is not error where it appears that the reference was with respect to the charges of negligence relied upon, which charges of negligence were substantially the same in all the declarations filed in the cause.

4. INSTRUCTION—*approved form of.* An instruction pertaining to the duty of the master to furnish to his servant a reasonably safe place to work, as follows : " The jury are instructed that it was the duty of the defendant in this case to use ordinary care and prudence in furnishing to the plaintiff, James K. Clark, at and before the time of the accident complained of, a reasonably safe place and reasonably safe surroundings in which to work, and to use reasonable care to maintain and keep such place in a reasonably safe condition,"—approved in this case. (See reporters' note.)

5. INSTRUCTION—*approved form of.* An instruction pertaining to the duty of the master to furnish to his servant a reasonably safe place to work, as follows : " The court instructs the jury that the declaration in this case charges the defendant with negligence while the plaintiff was working in a building in the process of construction. In this connection the court charges you that the obligation of a master to provide a reasonably safe place for his servants to work in, does not impose

upon him the duty of keeping a building in which such servant is employed, in a safe condition at every moment of his work, so far as its safety depends upon the due performance of the work by him and his fellow-servants, if any. So, in the case at bar, if the evidence shows that the column in question was properly and safely erected, in the exercise of due and ordinary care, then the fact that it was not anchor-bolted or braced, does not entitle the plaintiff to a verdict, although the anchor-bolting or bracing might have made the column still more secure. If the proof shows that the column was thrown down as the result of other causes than the failure to exercise due care on the part of the defendant in the erection and placing of the column, then the defendant is not liable, and the verdict of the jury should be not guilty,"—approved in this case. (See reporters' note.)

6. ARGUMENT—*when limiting time for, is not reversible error.* Held, in this case, that it was not an abuse of discretion to limit the time of argument to forty-five minutes, fifty-two minutes having been actually allowed to the complaining party.

7. SPECIAL INTERROGATORIES—*where giving by court of, at its own motion, without submission to counsel, not reversible error.* Such action by the court will not reverse where it appears that such special interrogatories relate merely to the main ultimate facts involved in the case.

8. SPECIAL INTERROGATORIES—*presumption as to submission of, in the absence of a contrary showing.* It is presumed that the court submitted special interrogatories, which he gave to the jury of his own motion, to the counsel for the respective parties prior to such giving.

9. ASSIGNMENT OF ERROR—*effect of omission of.* A point argued need not be considered by the court unless supported by an assignment of error.

10. VERDICT—*when, not excessive.* A verdict of $8,000 is not excessive where rendered in favor of a bridge and structural iron worker who, at the time of his injury, earned from $4 to $9 per day, was thirty-five years of age. capable of acting as foreman, and as a result of his injury was deprived of the use of his left arm and was permanently prevented from working at his trade and has no other way to earn his living.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed July 14, 1904.

**Statement by the Court.** July 16, 1901, appellee was injured by the falling of an iron column and beam attached thereto in the basement of a building in process of erection in Chicago by appellant, he at the time being in its employ and working under the direction of its foreman.

The negligence charged is stated in the amended declaration set out later. He brought suit for his injuries and on a jury trial had in March, 1903, recovered a verdict and judgment thereon for $8,000, from which this appeal is taken.

At the close of the plaintiff's evidence, and again at the close of all the evidence, appellant's counsel asked that the case be taken from the jury, presenting in each instance an instruction to that effect, but the requests were respectively denied and exceptions preserved. Before the opening of the argument of plaintiff's counsel, six special interrogatories were submitted in accordance with the statute in such case provided, but they were refused. The court, in addition to the general instructions given to the jury, of its own motion submitted to the jury six special interrogatories as follows :

" The jury are instructed and directed to answer from the evidence each of the following questions by writing under each of them either ' Yes ' or ' No,' to wit:

1st. Was the plaintiff, just before and at the time of the happening of the accident complained of, in the exercise of ordinary care for his own safety?

2d. Was the defendant guilty of the negligence charged against it in the declaration herein?

3d. If it was, then did such negligence proximately and directly cause said accident?

4th. Was such accident caused by the negligence, if any there was, of the fellow-workmen or fellow-servants of the ·plaintiff?

5th. Was the said accident caused by the striking of the derrick (if it did strike) against the cross beam ? ·

6th. Was said accident due to one of the ordinary risks and perils incident to the work in which the plaintiff was engaged ? "

To this action of the court exceptions were duly preserved. The jury answered the first, second and third interrogatories, " Yes," and the fourth, fifth and sixth, " No." Against the objection and exception of appellant's counsel the court also limited the argument to the jury to 45 minutes on each side, but the time of appellant's counsel was extended to 52 minutes. When this time had been con-

sumed in argument to the jury by counsel, he requested further time, but this was refused by the court and an exception preserved, whereupon the court adjourned to ten o'clock A. M. of the next day, when appellant's counsel filed a written motion requesting additional time in which to argue the case to the jury upon the questions of fellow-servants and damages, of not less than one hour or 45 minutes. This motion was overruled and an exception preserved.

At the request of appellee the court gave among other instructions the following:

IV.    "The jury are instructed that it was the duty of the defendant in this case to use ordinary care and prudence in furnishing to the plaintiff, James K. Clark, at and before the time of the accident complained of, a reasonably safe place and reasonably safe surroundings in which to work, and to use reasonable care to maintain and keep such place in a reasonably safe condition."

Among the instructions given at the request of appellant the court gave, in modified form, the following:

9.    "The court instructs the jury that the declaration in this case charges the defendant with negligence while the plaintiff was working in a building in the process of construction.    In this connection the court charges you that the obligation of a master to provide a reasonably safe place for his servants to work in, does not impose upon him the duty of keeping a building in which such servant is employed, in a safe condition at every moment of his work, so far as its safety depends upon the due performance of the work by him and his fellow-servants, if any.

So, in the case at bar, *if the evidence shows that* the column in question was properly and safely erected, in the exercise of due and ordinary care, then the fact that it was not anchor-bolted or braced, does not entitle the plaintiff to a verdict, although the anchor-bolting or bracing might have made the column still more secure. *If the proof shows that* the column was thrown down as the result of other causes than the failure to exercise due care on the part of the defendant in the erection *and placing* of the column, then the defendant is not liable, and the verdict of the jury should be not guilty."

The modifications made by the court are in italics.

Five days after the verdict was rendered, on motion of

plaintiff he was allowed to dismiss as to an amended declaration filed by him on March 7, 1903, consisting of three counts, which, though abstracted, does not appear to have any bearing upon the questions discussed by counsel.

Six days after the verdict was rendered the court permitted the plaintiff to file an amended declaration, which is abstracted as follows:

" Amended Declaration.   After stating the employment in a certain building in process of erection, etc., as before, the count continues that plaintiff was employed by the defendant and ordered by its foreman to work near a certain large, heavy iron column which the defendant had negligently and improperly erected and placed, and permitted to remain in an unsafe and improper condition; that said column had been erected and placed by the defendant before the plaintiff began work thereabout; that upon said column was placed an iron beam; that while in the performance of his duty as directed by the defendant's foreman, plaintiff was in the exercise of care and caution for his own safety; that said column standing near plaintiff where he was working, with the iron beam resting on the same, by reason of the defendant's negligence, suddenly and without warning or notice fell, and the beam with great force and violence struck against the plaintiff; by reason whereof the bones of his left shoulder and arm became broken, crushed and fractured.

The count concludes with a statement of the injuries, as in other counts, except that on page 30 it is stated that the plaintiff will in the future continue so to suffer and lose health, claiming damages of $35,000.

Second Count.   After stating the employment, as in other counts, the count continues that it was the duty of the defendant to furnish plaintiff a reasonably safe place at which to work, and to have the column in a reasonably safe and secure condition; that regardless of its duty defendant left the column in an unsafe, insecure and unfastened condition, of which condition the defendant knew, or by the exercise of ordinary care and caution could have known, and of which plaintiff did not know; that upon said column was afterwards placed an iron beam, and that by reason of such insecurity, while working alongside said column, said column, with the said beam so resting thereon, fell, and the beam with great force and violence fell against the plaintiff without any warning or notice to him.   By reason whereof

he was injured (stating the injuries in the same way as before, except that on page 32 it is stated that the plaintiff will in the future continue to suffer and lose health, and concluding with damages of $35,000).

Third Count. After stating the employment of the plaintiff by the defendant, while engaged in the erection and construction of said iron structure, the count continues to state that in and about said erection and construction of said building the defendant employed divers large numbers of men, and among others employed the plaintiff; that when he went to work, there was standing a large, heavy column made of iron, erected and placed by the defendant, without plaintiff's knowledge, and was in position when he went to work for the defendant, and when he was directed by the defendant's foreman to work around and about said column; that it was negligently and improperly maintained in an insecure, unsafe and improper condition, of which the defendant knew, or by the exercise of reasonable care could or should have known; that while so employed, in the exercise of care and caution for his own safety, the column, by reason of the negligence aforesaid, and an iron beam resting upon the same, suddenly and without warning fell; that the beam struck upon and against the plaintiff without any warning or notice to him, by reason whereof plaintiff's bones of his left shoulder and arm became broken, crushed and fractured.

The count concludes as in other counts, and states that the plaintiff will in the future continue to suffer and to lose health, claiming damages of $35,000."

Two days after the filing of the above amended declaration the court ordered the defendant to plead thereto, to which order an exception was preserved, though no plea appears in the record, except a plea of not guilty, filed March 4, 1902, to the original declaration. It also appears that by agreement of the parties it was ordered, January 28, 1903, that the defendant's plea, then on file, stand as a plea to the plaintiff's amended declaration. Plaintiff had filed an amended declaration on January 23, 1903. The case was on March 16, 1903, agreed to be tried on the original declaration and amendments to it filed January 23, 1903, and the amended declaration filed March 7, 1903, as to which last declaration the plaintiff dismissed, as above stated, after the verdict was rendered. Before the trial

commenced, but after the selection of the jury, the plaintiff was allowed to file, on March 18, 1903, an amended declaration. No plea to this amended declaration appears in the record, nor does it appear that any order was entered by the court that any plea previously filed should stand to this amended declaration, nor does it appear that any objection was made by appellant's counsel to the trial proceeding with the record in this condition. No claim is made that any error was committed by reason of the court permitting this amended declaration to be filed after the jury was impaneled, nor in proceeding to trial without any plea thereto. The first instruction given for appellee refers the jury to the original declaration, the amendment thereto of January 23, 1903, and the amended declaration filed March 18, 1903. Defendant's fifth instruction also refers the jury to the declaration in the case, its several counts, and instructs the jury what they charge, substantially as set out in the declaration filed March 18, 1903.

Moses, Rosenthal & Kennedy, for appellant.

Darrow & Masters, for appellee; James H. Lewis, of counsel.

Mr. Justice Windes delivered the opinion of the court.

One contention of appellant's counsel is that the court committed reversible error in permitting the plaintiff to file an amended declaration after the verdict, and in this connection they say that " the only declaration submitted to the jury was that of March 18, 1903." This was an amended declaration filed after the trial commenced. That the trial was on this declaration cannot be successfully controverted. It took the place of all other previous declarations. No objection was made to its filing, nor to proceeding with the trial after it was filed without a plea on the part of appellant. We need, then, only to consider whether or not appellant was prejudiced by the filing of the amended declaration after verdict.

We have not, because of its length, set out the amended .

declaration filed March 18, 1903; also for the further reason that it is not claimed by appellant's counsel that there is any material difference between that declaration and the one quoted in the statement, which the court permitted to be filed after verdict, except that the latter declaration charges that the column in question was negligently and improperly erected and "placed," and that the plaintiff "will in the future continue to suffer and to lose health," whereas, in the declaration filed March 18, 1903, it is only charged, in the first count, that the defendant had negligently and improperly erected and permitted the column to remain in an unsafe and improper condition, and in the second count that the defendant by its servants, not fellow-servants of the plaintiff, erected said column and left it in an unsafe and unfastened condition, etc., and in the third count that said column which was erected by the defendant was negligently and improperly maintained in an insecure and improper condition; also that neither of the counts, although they allege the plaintiff's injuries substantially as in the amended declaration filed after verdict, allege that the plaintiff will in future continue to suffer and to lose health.

Under section 23 of chapter 110, Revised Statutes of this state, known as the Practice Act, there can be no question but that the court had power to allow the amendment. We think it apparent from the references made to the difference between the two declarations, that appellant was in no way prejudiced by the amendment. Under the allegation in the declaration filed March 18, that the defendant negligently and improperly erected and permitted the column to remain in an unsafe and improper condition, we think all the evidence admitted was proper. There can be, as we think, no very material difference between the allegation that the column was negligently erected and the allegation that it was negligently erected and placed. If the column was erected, it was at the same time placed. The same considerations apply as to the allegation with regard to future suffering and loss of health. In addition

to the fact that the declaration of March 18 alleges the plaintiff's injuries in substance as they are stated in the amended declaration filed after verdict, it is alleged that as a result of plaintiff's injuries, his "shoulder and arm have been rendered and still are for all time unfit for use;" also that as a result of his injuries plaintiff "has been rendered unable and unfit to perform any work." These allegations, in our opinion, are sufficient to render competent all the evidence which was admitted with regard to plaintiff's injuries, and we think it apparent from a reading of the evidence in the record that it is a fair inference therefrom that the plaintiff will continue to suffer in the future as a result of his injuries. In Springer v. Schultz, 105 Ill. App. 544–55, it was said (citing numerous cases): "It is enough that the declaration showed the injury received without describing it in all its seriousness, and the recovery could be to the whole extent of the injury." It was an excess of caution on the part of counsel to have asked to amend the declaration after verdict, and we think the court might well have denied it.

In this connection it is argued that the court erred in the giving of instructions 1 and 2 for the plaintiff, because the first instruction refers the jury to the declaration filed February 17, 1902, the amendment thereto filed January 23, 1903, and the amended declaration filed March 18, 1903, and the second instruction permits the jury to allow damages for future suffering and loss of health. We think these instructions present no sufficient ground for reversal. It is true the jury should not have been referred to any other declaration than that filed March 18, but the reference in the instruction is to the charges of negligence set up in the different declarations. No material difference is pointed out by counsel between the charges of negligence in the different declarations referred to, and we are unable to discover any which, in our opinion, could have worked any prejudice to appellant. As to the matter of future suffering and loss of health, we think what has been said sufficiently disposes of the alleged error in instruction 2.

It is claimed that the court erred in limiting the time for argument on behalf of appellant to fifty-two minutes. Counsel do not cite any authority in support of this contention, and concede the general rule that the trial court has power to limit the time within which counsel shall address the jury, but insist that in this instance that discretion was abused by the learned trial judge. We cannot yield assent to the contention. We held in the case of Cobb Choc. Co. v. Knudson, 107 Ill. App. 668, in which the facts were as complicated as in this case, that it was not reversible error to limit the argument to thirty minutes upon each side; that such a limitation was not an abuse of the discretion of the presiding judge. This case has since been affirmed by the Supreme Court. 207 Ill. 452. It is true, we said in that case that the time seemed short, and "no specific injury arising out of this limitation is pointed out," while in this case it is said that the time was insufficient to argue the questions of fellow-servants and damages, and to explain to the jury an unfortunate circumstance which occurred in the trial relating to an imperfect model with reference to which the witnesses testified. We have given due consideration to all these matters, and think that the time limited was not such an abuse of the court's discretion as would require a reversal of the case. We do not regard the question of fellow-servants of special importance in the case, since we think that the evidence, independent of that question, justifies the verdict on the matter of appellant's liability. The question of damages, while important, presents no serious complication and required no extended argument. There is nothing in the record to show the importance of an argument regarding the model aside from the fact that the evidence shows that it was prepared by the appellant's servant, and it was incorrect. During the progress of the trial the record fails to show that there was any question made as to a lack of good faith on appellant's part in the preparation of this model. No claim was made to the court nor in the formal motion made by appellant for additional time after an adjournment of the trial from one day to ten

o'clock A. M. of the next day, that there was any desire to make an argument regarding the model.

It is further said that the court erred in submitting of its own motion to the jury the six special interrogatories quoted in the statement, and reference is made, since the case was taken, to the recent case of P., C., C. & St. L. Ry. Co. v. Smith, 207 Ill. 486–90, which holds that special interrogatories given to the jury by the court should first be submitted to counsel. Under the ruling of the Supreme Court in that case the court's action here, assuming that the interrogatories were not first submitted to counsel, is erroneous, but we think it is not sufficient to justify a reversal. The Supreme Court say in the Smith case that "there might be cases where the submission of questions by the court without notice would not be ground for reversal, where it could be seen there was no injurious effect." We think that this is such a case. In accordance with the statute appellant's counsel submitted six special interrogatories calling for answers by the jury as to many material— though, as we think, the trial court so held, and that ruling is not questioned—evidentiary facts involving the most important questions in the case. The interrogatories quoted in the statement call for answers to questions involving all, or at least, the principal ultimate facts in issue on the trial, and we are at a loss to perceive how appellant could have been prejudiced by the court's action. In the Smith case the trial court submitted a special interrogatory with respect only to the care of appellee, who had sued for personal injuries, and it was said that if such an interrogatory is submitted a party may desire to submit other interrogatories concerning other material facts, whereas in this case the interrogatories cover, as we think, all the material ultimate facts in the case. Moreover, it must be assumed, in the absence of any showing in the record to the contrary, that the court first submitted the special interrogatories to counsel before giving them to the jury.

Appellant's counsel, with great earnestness, argue that the court committed error in the giving of appellee's fourth

instruction, and in the modification, and giving as modified, of appellant's ninth instruction, both of which are quoted in the statement. It is claimed that they give to the jury conflicting views of the law as to appellant's duty toward appellee, and that the fourth instruction does not lay down the correct rule as to appellant's duty to appellee to furnish a reasonably safe place and reasonably safe surroundings in which to work, and to use reasonable care to maintain the same, under the circumstances of this case. Also that the court erred in the refusal and in the modification and giving as modified of appellant's seventh, ninth, tenth, fourteenth, seventeenth, twenty-second and twenty-sixth instructions, for the reason that these instructions as asked state a correct rule as to assumed risk, but that the court modified each of them by stating that ordinary risks incident to the employment were assumed only " after the defendant had taken reasonable care to prevent or remove them." The fourth instruction, we think, states the correct rule as to appellant's duty to appellee as to furnishing him a reasonably safe place and reasonably safe surroundings in which to work, and in maintaining the same in a reasonably safe condition, and we see no necessary conflict between it and the ninth instruction. It is true, the ninth instruction limits the duty of appellant to have and keep the building in a safe condition by the qualification that he is not bound to do so " at every moment of his (the servant's) work, so far as its safety depends upon a due performance of the work by him and his fellow-servants, if any." The fourth instruction merely states the general rule, which we think is applicable to the leading facts of this case, and the ninth is but a limitation upon the general rule, which has some basis in the evidence for its application, viz: evidence tending to show that the column was caused to fall by reason of the acts of certain of appellee's fellow-servants. In this connection counsel lay especial stress upon the case of Richardson v. Anglo-Am. P. Co., 72 Ill. App. 77–80, in which it was said in substance that the hazard involved in working upon a building in process of construction and

undergoing changes of condition constantly, was an ordinary hazard incident to the employment and assumed by the employee. Also the case of Merchant v. Mickelson, 101 Ill. App. 401–4, in which this court held that the doctrine that the master must furnish his servants a safe place in which to work, is not applicable when the servant is employed to take down a building, which work was necessarily dangerous. We think both these cases clearly distinguishable from the one at bar; the Richardson case, because the conditions there were temporary and undergoing constant changes in the performance of the work, and in the Merchant case the work was necessarily dangerous, whereas the conditions here, as the evidence shows, were not temporary in their nature, nor was the work necessarily dangerous. It is a serious question also, if the doctrine of these cases is not overruled by the Supreme Court in the case of Herath, *infra*. It seems unnecessary to review cases from other jurisdictions, since the decisions of the Supreme Court seem to us applicable.

The principle applied in the case of Ross v. Shanley, 185 Ill. 390–93, which was an injury to an employee of appellant engaged in the building of a tunnel, caused by the falling of defective shoring in the tunnel, is applicable here. The court say: "Appellant's foreman was chargeable with the specific duty, to wit, that of exercising reasonable care to see that the place where he sent appellee to work was reasonably safe, and appellee had the right to rely upon the performance of such duty by appellant's foreman before he gave the order for him to work where he did. Appellee was not required to make a critical and careful examination of his surroundings at the place where he was sent to work by the foreman. We think it was properly left to the jury to determine whether appellant's foreman exercised such reasonable and ordinary care to see that the place where he ordered appellee to work was reasonably safe before he sent him there to work, and also whether appellee knew or should have known the danger to which he was exposed."

In the recent case of Pressed Steel Car Co. v. Herath, 207 Ill. 576, the Supreme Court affirmed a judgment in favor of an employee's administrator against the car company, his employer, for injuries caused by the falling of a roof of a building in process of construction, and which had been damaged by fire so that it was found necessary to tear away parts of the roof in order that the building might be re-roofed, which caused the death of the employee, who was at the time engaged in the work of removing portions of the burned roof. One of the contentions in the case was that the rule that it is the "duty of the master to furnish the servant a reasonably safe place in which to work, could not apply because the work of demolishing the roof was inherently dangerous and made dangerous the place where the servants must work, and the employee must of necessity assume the ordinary dangers incident to the undertaking in which he voluntarily engaged." It appears in that case that the employee and his foreman both had knowledge of the danger of the work which was being done, and the foreman gave an order to the employee to go beneath a section of the roof, which order he obeyed, and went into a place which he knew to be dangerous and was killed, and notwithstanding these facts the contention of the employer was overruled, it was held liable, and the court said of the employee, under these circumstances, that the law required of him only that he "act with that degree of prudence that would have controlled an ordinarily prudent, careful and discreet man." It is true, the decision is placed upon the fact that the foreman gave the employee an order to do work in a place which the latter knew to be dangerous, but at the same time the court indirectly overruled the employer's contention that the general rule as to the master's duty to furnish the servant a reasonably safe place in which to work, did not apply. In principle we think each of these two cases is the same, on the question presented by these instructions, as the case at bar. In this case the evidence shows in substance that the appellee, while he was an experienced iron worker, had previously served as a

foreman in the same kind of work at which he was engaged when injured, knew nothing whatever as to the manner in which the column was erected and placed, had worked in the building where he was hurt but a few hours before the accident, and could not see, because of sand and dirt around the base of the column, how it was fastened. The column was in no way braced or anchored to the foundation, as the evidence strongly tends to show was necessary in order to make a proper and reasonably safe construction, so as to prevent its falling over. In this regard, however, there is a conflict in the evidence, that on behalf of appellant tending quite strongly to show that the manner in which the column was fastened to its foundation was a proper one and a reasonably safe construction. Whether or not the appellant was negligent in that regard, or whether the appellee assumed the risk or was guilty of contributory negligence, were all questions for the jury upon the evidence, and we think, from a careful reading of it, their verdict on all these questions, as well as their answers to the special interrogatories, which appear in the statement, are not clearly and manifestly wrong.

As to the question of assumed risk presented by the modifications of the several instructions referred to, we think there is no reversible error. The learned trial judge seems to have been guided, in his rulings upon the instructions, by the cases of C. & A. R. R. Co. v. House, 172 Ill. 601–5, and Malott v. Hood, 201 Ill. 202–7, in the former of which cases it was said : " An employee does not assume all the risks incident to his employment, but only such as are usual, ordinary, and remain so incident after the master has taken reasonable care to prevent or remove them, or if extraordinary, such as are so obvious and expose him to danger so imminent that an ordinarily prudent and careful man would anticipate injury as so probable that in view of it he would not enter upon or remain in the employment." The principle here announced is reaffirmed in the Malott case. Appellant's counsel claim that the holding in the House and Malott cases is in conflict with T. H. & I. Ry. Co. v. Williams, 172 Ill. 379, and other

cases referred to. If, as claimed by counsel, there is such conflict, it is the duty of this court to, and it will be guided by the later expression of the Supreme Court in the Malott case, as well as in the cases of City of La Salle v. Kostka, 190 Ill. 130–5, and Western Stone Co. v. Muscial, 196 Ill. 385, in which the principle of assumed risk is announced substantially as stated in the instructions referred to.

It is also claimed that the court erred in the giving of appellee's third instruction, and the refusal of appellant's instructions 1 to 8, both inclusive. We deem it unnecessary to refer to these instructions in detail; suffice it to say we have considered them all and think there is no reversible error in any of the court's rulings thereon. While we have considered the rulings of the court on appellee's first, second and fourth instructions, we need not have done so, because no error is assigned upon them or the appellee's third instruction, which properly presents for consideration the court's rulings thereon. The only error assigned which questions the court's rulings upon instructions is that the court erred in denying appellant's motion for a new trial. The only point in the motion for a new trial with regard to appellee's instructions, refers to instructions "1 (A), 2 (D), 3 (B) and 4 (C)." No such instructions appear in either the abstract or the record.

It is claimed also, that there is no satisfactory evidence as to how the column and beam attached to it came to fall; whether by reason of its improper and negligent construction and erection, or by its being struck by a derrick which was operated by appellee's fellow-servants, or by the wind; also that it was clear from the evidence that both Clark and the appellant were upon an equal footing as to the care which each should have exercised, and that it clearly appears that Clark was injured through the negligence of his fellow-servants. To discuss all these questions would unduly extend this opinion, already long. We have considered them all, and are of opinion that they were properly decided in favor of appellee by the jury, and that we should not disturb the verdict.

Hansell-Elcock Foundry Co. v. Clark.

It is also said, and this is the final contention of appellant, that the damages are excessive. Appellee suffered very serious injuries from the accident, prior to which he was a strong and healthy man, a bridge and structural iron worker by trade, who earned $4 or $5 and sometimes $9 per day. When injured he was about thirty-five years of age, and was capable of performing the duties of a foreman at his trade. As a result of his injuries he suffered much pain, is practically deprived of the use of his left arm, cannot work at his trade, and has no other way, as he says, to make a living. In view of these facts and other circumstances shown by the record, we do not feel justified in disturbing the verdict because of its amount.

There being, in our opinion, no reversible error in the record, the judgment of the Superior Court is affirmed.

*Affirmed.*

REPORTERS' NOTE. In the foregoing opinion it is stated that it is a serious question as to whether or not the doctrines of Richardson v. Anglo-Amer. P. Co., 72 Ill. App. 77-80, and Merchant v. Mickelson, 101 Ill. App. 401-4, are not overruled by the decision in Pressed Steel Car Co. v. Herath, 207 Ill. 576.