## F. J. McCain Company v. John Kingsley.

### Gen. No. 12,157.

1. WRIT OF ERROR—*when absence of praecipe for, and non-issuance of writ, immaterial.* Where a party, seeking to review by writ of error, himself brings up the record, the absence of the *praecipe* for the issuance of and the non-issuance of the writ are immaterial.

2. SAFE PLACE TO WORK—*to what extent obligation of master to furnish, does not extend.* The obligation of a master to provide reasonably safe places and structures for his servants to work upon does not oblige him to keep the building they are employed in erecting in a safe condition at every moment of their work, so far as its safety depends upon the due performance of that work by them and their fellow-servants.

Action on the case for personal injuries. Error to the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the October term, 1905. Reversed. Opinion filed April 19, 1906.

**Statement by the Court.** February 5, 1896, Kingsley, while working for plaintiff in error, was injured. He brought an action for damages and on July 14, 1900, recovered a judgment in the sum of $7,000. December 17, 1904, plaintiff in error brought the record to this court. It seems that no *præcipe* asking for a writ of error was filed, nor was any writ of error ever issued. The defendant in error made a motion to strike the case from the docket, which motion was reserved to the hearing.

The evidence shows that Kingsley for thirteen years prior to the accident had been employed in structural iron work, that he understood this business thoroughly, and was always paid the highest wages. The place of the accident was the Great Northern Hotel building in the city of Chicago. Kingsley had been working upon this building about two and one-half months before he was injured. It appears from the evidence that the work of the structural iron men consisted first in assembling the iron as near the place it was to occupy in the structure as was reasonably convenient; and second, in putting the iron thus assembled in its proper place in the structure. Prior to the day of the accident the iron work had been put in place to and including the skeleton floor of the sixth story of the building. Before the day in question Kingsley had worked on the ground unloading and sorting out the iron and sending it up by means of the hoisting derrick. Upon that day he was thus employed. When the iron reached the sixth floor it was received by Galvin, who operated the derrick,

and was distributed by him over that floor at different places within the arc of the boom. If it was desired to move a particular piece of iron further, it was put upon a roller called a "dolly," and then pushed to its place. One of the pieces of iron thus distributed was a long four-faced column weighing about two tons. The sixth floor was unfinished; only the I-beams were in place. They formed the foundation of the floor, and were placed about three feet apart. Upon them lay a runway two planks wide, upon which the "dolly" traveled, and scattered around were the iron columns, struts, etc., next to be put in place. Kingsley had been told by Hunter, the foreman, to come up to the sixth floor when he got through with the work on the ground. He did so, and then Hunter told Kingsley and Welch to move an iron strut into position. They took hold of it, but found it too heavy for them to handle. Thereupon Hunter called on other workmen to help them. One Cowan, a fellow-laborer, started to go to their assistance. When he came to this long column he left the I-beams upon which he had been walking, and started to run along it, when it rolled and the end nearest Kingsley caught his left foot, crushing it, and rendering amputation necessary. It seems that this column an hour and a half before had been placed by Galvin and two other workmen upon an unsteady or upon an insufficient surface, and that when Cowan stepped on it his weight caused it to shift its position. Hunter, the foreman, had seen the column lying there, but had not noticed it particularly.

At the close of plaintiff's evidence defendant moved the court to instruct the jury to find a verdict for the defendant, which motion the court denied, and the trial proceeded to judgment. This writ of error followed.

O. W. DYNES, for plaintiff in error.

CHARLES C. SPENCER and DANIEL L. CRUICE, for defendant in error.

MR. JUSTICE BALL delivered the opinion of the court.

In Birkby v. Solomons, 15 Ill. 122, the court say that

"where the record is brought up by the party and filed in the first instance, the writ is unnecessary, or, at most, is but matter of form."

In People v. Rose, 207 Ill. 352, it is held that the cancellation of the charter of a corporation by the Secretary of State, under the Act of 1901, does not work a forfeiture, but is simply *prima facie* evidence of non-user, which may be availed of by the People in a proceeding to forfeit the charter. The legal existence of a corporation, or the authority of an attorney or of any other agent or officer to act for it, cannot be questioned except by a proceeding by *quo warranto*. Blake v. The People, 109 Ill. 516; Eddleman v. Union, etc., 217 Ill. 409. Tested by these authorities, the motion to strike the case from the docket is not well taken, and is therefore overruled.

The declaration alleged that it was the duty of the defendant to so lay or place these iron columns that they would be secure and safe from rolling, but not regarding this duty the defendant, carelessly, by its servants (not the fellow-servants of the plaintiff), so laid or placed one of said columns that one end of it rested on a certain piece of wood and formed a bearing so that while the plaintiff was so in the employ of the defendant and in the exercise of due care, said column rolled over and upon the left leg of the plaintiff, etc.

Defendant in error, an experienced workman, while employed in the construction of an iron framed building, was injured by the turning or rolling of an iron column temporarily lying upon an unsteady surface near the place where it was to be put in the structure. The column was caused to roll or turn by a fellow-workman attempting to run along it in approaching defendant for the purpose of assisting him in handling a heavy iron strut.

We are of the opinion that defendant in error did not make out a cause of action, and that the trial court should have instructed the jury, as it was requested, to find a verdict for the plaintiff in error.

The obligation of a master to provide reasonably safe

places and structures for his servants to work upon does not oblige him to keep the building they are employed in erecting in a safe condition at every moment of their work, so far as its safety depends upon the due performance of that work by them and their fellow-servants.

In Armour v. Hahn, 111 U. S. 313, Hahn, a carpenter, in the employ of Armour, was with other carpenters and bricklayers engaged in the erection of a building. The cornice was supported by timbers projecting sixteen inches from the wall and passing through the wall a distance of thirteen inches. The brick work had been laid to a level with the tops of these timbers, but not over them. While the work was in that condition Hahn and another carpenter were ordered to place a joist at the outer edge of these timbers to complete the cornice foundation. In obeying this order Hahn placed his foot on the outer part of one of these timbers, when it tipped over and caused him to fall some thirty-four feet to a platform below, and to suffer the injuries sued for. Counsel for Armour, under a Kansas statute, filed a demurrer to this evidence, upon the ground that no cause of action was proved; but the trial court overruled the same, and the cause proceeded to judgment in favor of Hahn. Upon appeal the Supreme Court announced the foregoing rule, called attention to the fact that Hahn was of full age, engaged in ordinary work of his trade as a carpenter, and concluded: "If it (the timber) was at the time insecure, it was either by reason of the risks ordinarily incident to the state of things in the unfinished condition of the building; or else by reason of some negligence of one of the carpenters or bricklayers, all of whom were employed and paid by the same master, and were working in the course of their employment at the same place and time, with an immediate common object, the erection of the building, and therefore, within the strictest limits of the rule of law upon the subject, fellow-servants, one of whom cannot maintain an action for injuries caused by the negligence of another against their common master." And accordingly the judgment was reversed.

In Murphy v. Greeley, 146 Mass. 196, the plaintiff, an experienced carpenter, engaged in finishing a certain room in a building then in the process of erection, in leaving his work in the evening and in passing through a very dark hall way, lost his bearings and wandered into a room and there fell through an open space in the floor and was injured. The trial judge directed a verdict for the defendant. Upon appeal the Supreme Court affirmed this action, holding that a contractor to do the carpenter work on a brick building in process of erection, who hires an experienced carpenter in the full possession of his faculties to do the furring on a room, is not bound to maintain artificial lights to prevent the carpenter from wandering out of a regular passage way, and will not be liable to him if he so wanders in the darkness, and, falling through an opening in another room, is injured.

In Richardson v. Anglo–American P. Co., 72 Ill. App. 77, appellant, a carpenter, engaged in the reconstruction of a building, was ordered to work upon the "lookout," an addition placed upon the top of the main building. The roof boards of the main building were in place, and with the exception of three or four boards adjoining the southeast corner of the "lookout" were properly nailed. In proceeding with his work upon the "lookout," appellant stepped upon one of these loose boards and fell over the front of the building some fifty feet to a shed below, and thus sustained the injuries for which he sued. The trial judge directed a verdict for appellee. Upon hearing, this court, through Justice Sears, said: "The doctrine contended for by counsel for appellant is settled beyond possible question as applied to machinery, structures or places *provided* by the employer for the use of his employee. But the rule cannot, we think, be reasonably extended to cover portions of an incomplete building in process of construction. That it does apply to scaffolding, furnished by the employer for brief use only, is true; and the rule is often announced as covering 'surroundings,' viz.: the master is obligated to provide reasonably safe surroundings; but it does

not seem logical or just to give to the term an interpreta-- tion broad enough to cover portions of the building itself while in the course of construction, and while undergoing constant changes and passing through successive temporary conditions, many of which must, from the very necessity ot construction, be dangerous. The hazard of working upon a building during such changes of condition should, it would seem, be held to be an ordinary hazard, incident to the employment and hence assumed by the employee."

The like rule was applied by this court to cases in which a building is being torn down: Clark v. Liston, 54 Ill. App. 578; Chicago Edison Co. v. Davis, 93 Ill. App. 284; Merchant v. Mickelson, 101 Ill. App. 401; and W. W. Co. v. O'Donnell, 101 Ill. App. 492.

This court is committed to the rule as thus announced, and it fully applies to the facts in the case at bar. We, therefore, reverse the judgment of the Circuit Court.

*Reversed.*