## Elizabeth Griffith Heatley, Executrix, Appellant, v. The George A. Fuller Company, Appellee.

## Gen. No. 15,789.

MASTER AND SERVANT—*when former not required to furnish safe place.* If the character of the work is such that changes in the conditions surrounding the servant are essential and necessarily result, the responsibility for the safety of the servant resulting from such changes is not with the master but is an incident of the servant's employment.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the HON. WILLARD M. McEWEN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed November 14, 1911.

CALHOUN, LYFORD & SHEEAN, for appellant; EDWARD W. RAWLINS, of counsel.

ELBRIDGE HANECY, F. J. CANTY and J. C. M. CLOW, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

This action was brought by appellant against appellee for wrongfully causing the death of plaintiff's testator. Upon the trial at the close of plaintiff's evidence the trial court peremptorily instructed the jury to find the defendant not guilty, and entered judgment upon the verdict returned in accordance therewith.

The declaration consisted of four original and four additional counts. Upon examination of the different counts in the declaration we think they all set out substantially the same negligence.

In the first count, which may be taken as a fair sample of all as to the negligence averred, it is alleged that the defendant was engaged in the erection of a certain building, and that it erected and constructed, or caused to be erected and constructed, a certain temporary platform, framework, staging or scaffolding; that the deceased was in the employ of the defendant as a carpenter and was then and there working about said building; that it became necessary for Heatley, the deceased, in the performance of his duties to go and be upon said temporary platform, framework, staging or scaffolding; that it was the duty of the defendant to exercise reasonable care to furnish said deceased with a reasonably safe and suitable place to perform his duties as such servant, and to keep and maintain said platform, framework, staging or scaffolding at all times in a reasonably safe and suitable condition; that the defendant negligently failed and neglected to perform its said duty, and carelessly permitted and allowed said platform, framework, staging or scaffolding to become, be and remain in an unsafe and dangerous condition, and that while the deceased in the exercise of ordinary care for his own safety, went and was

upon the temporary platform, framework, staging or scaffolding he was caused to fall and received injuries from which he died, by reason of the unsafe and dangerous condition of the scaffolding.

The evidence of the plaintiff in the action tended to show the following facts:

At the time of the accident, September 4, 1907, the deceased, Thomas Heatley, was in the employ of the appellee, the George A. Fuller Company, as carpenter, and was working at the Montgomery Ward building, which was being constructed by appellee at the corner of Chicago avenue and Larrabee street, adjoining the Chicago river, in the city of Chicago. The building was about 600 feet long from north to south and about 200 feet wide from east to west and was to be constructed about eight stories high. The west side of the building adjoined the Chicago river. The building was being constructed of reinforced concrete construction, and at the time in question the second floor had been completed, and Heatley and his companions were at work on the third floor, under the direction of appellee's foreman, John O'Toole, laying panels or frames into which the concrete for the floor was to be poured. The floor of the building was divided by the main girders of the building into squares or sections 16 feet square and in each of these squares 2 by 10 joists were laid, four in number, dividing the sections into equal spaces each a little more than three feet wide. Upon these joists panels were laid, each panel being 4 feet wide and 16 feet long. Four of these panels would completely fill the square or section. Upon these panels in each section cement would be poured until it completely filled the section and would be six or eight inches deep. These joists and panels and in fact the entire wood construction were merely temporary, and, as soon as the cement had sufficiently hardened, the joists, panels and wood construction would be

taken out. The sections in the row along the west side
of the building were not square, because the west side
of the building following the line of the river and the
west wall instead of running directly north and south
ran northwest and southeast. This made the east and
west dimensions of the sections in the row on the
west side of the building vary, some of the sections
being less than 16 feet from east to west while others
were somewhat more than 16 feet. The north and
south dimensions of all the sections were the same. It
was through one of these river sections that the de-
ceased fell. Some of the sections on the third floor
where deceased was working had already been filled
with cement and had hardened or were in process of
hardening. In others the joists and panels had already
been placed ready to receive the cement, while in others
only the joists had been placed and had no panels in
them at all.

The deceased at the time of the accident was working
with a gang of carpenters engaged in placing and fit-
ting panels into the sections, making them ready to be
filled with cement. At the time of the accident he with
three other men was carrying one of the panels to the
section which he was helping to prepare. As they car-
ried this panel the deceased and one of the other men
were at the front end of the panel and two others at
the rear end of it. The deceased occupied a position at
the right front corner. As he approached his section
carrying this panel he stepped upon one of the 2 by 10
joists which was in a section immediately adjoining the
one upon which he was engaged, the joist turned with
him, he lost his balance and fell to the floor below. At
the very time that he approached the place where he
fell and the joist upon which he stepped, two car-
penters were actually engaged at work upon the joist,
one of them at one end and one at the other. Every-
thing there was in plain sight and immediately before

deceased's eyes. It was broad open daylight. It was the top floor of the building as it then stood, with no structure or construction of any kind built above the floor. The two men working on the particular joist were sitting on top of it, one at either end of the joist, and were actually working on it at the time that the deceased stepped on the joist and fell.

The contentions are that the court erred in instructing the jury to find the defendant not guilty, and erred in overruling plaintiff's motion for a new trial.

It appears from the theory of the case as set out in the various counts of the declaration, that the defendant was negligent in constructing and maintaining the scaffolding or platform upon which the deceased was at work, and that the defendant was also negligent in not giving the deceased a safe place in which to work. Upon that theory of the case the authorities cited by counsel for appellant are in point, for it is no doubt a sound proposition of law that if the master provides a platform or staging or scaffolding for his employes to work upon, it is his duty to make such structure reasonably safe for the purpose of use by his servants; and if the evidence proved the averments of the declaration the plaintiff would undoubtedly have a right to recover, and the court erred in taking the case from the jury. But, in our opinion, the evidence does not tend to show that the defendant had erected any scaffolding, platform or other structure designed for the purpose of furnishing a reasonably safe place for its employes, including the deceased, to work. On the contrary, the evidence without contradiction or controversy shows that the building was in process of construction and had progressed to the third floor, and that the workmen were engaged in the construction of the third floor of the building; that no scaffolding, platform or other structure was erected for the purpose of giving the workmen a reasonably safe place to work upon, but

that the joists were being placed in position for the purpose of constructing and supporting the panels into which the cement was to be poured in the regular construction of the building. The evidence clearly shows that the men who were at work upon the joists upon which the deceased stepped, just before he fell, were engaged in lengthening the joist in order to make it long enough to construct one of the irregularly shaped panels, and at that time they were actually at work upon the joist for that purpose. It is true that the evidence shows that this joist had been made fast at one time, but, by order of the foreman it was loosened up and the cleats taken from it for the purpose of lengthening it, and the men were at the moment of the accident actually at work upon the joist, one at each end of it. This was apparent to the deceased as it was to everybody, and was simply one of the processes of construction which had to be used in making the irregular panels on the west side of the building.

The evidence therefore fails to support the averments of negligence in the declaration, and for that reason there can be no recovery. An additional reason for denying the right of recovery in this case is, the defendant was not required, in the actual construction of the building, to observe the care, vigilance and diligence that would have been laid upon it had it constructed a platform, staging or scaffolding upon which the men were to work.

In Village of Montgomery v. Robertson, 229 Ill. 466, the court said:

"There is a general rule that a master must exercise reasonable care to furnish a reasonably safe place for his servant to work, but that rule is subject to limitations and exceptions. One exception universally recognized is that the general rule does not apply where the conditions are changed from time to time in the prosecution of the work. If the nature of the work is

such as to produce changes and temporary conditions in the place where the work is performed the rule does not require the master to keep the place reasonably safe under such changed conditions which the work renders necessary.  (Thompson on Negligence, Section 3876.)  In such a case the master does not make or create the place or conditions but they are created by the progress of the work and the workmen engaged in it.  In this case the removal of the gravel created the attendant dangers, and while the master might become liable for an injury on account of some other fault or neglect he would not be liable under the rule here invoked.  A master cannot be held to make a gravel pit safe for employes from moment to moment when the natural support of the bank is being constantly removed.''

In Falkenau v. Ginley, 131 Ill. App. 399, 404, the court said:

''The same rule which governs the tearing down of a building is equally pertinent to one in process of construction.  As was said in Western Wrecking Co. v. O'Donnell, Admr., 101 Ill. App. 492: 'The work of tearing down an old building is necessarily attended with danger, and the rule that it is incumbent upon the master to furnish the servant a reasonably safe place in which to do his work does not apply.'  It is plain that in the construction of a building there are many dangers to be encountered until final completion, and the safe place rule as to the contractor for construction does not apply during the process of building.''

In McCain Co. v. Kingsley, 126 Ill. App. 165, the plaintiff was injured by a column rolling over on him which he claims negligently rested on a piece of wood forming a bearing, which had been insecurely and improperly placed.  The court held that a verdict should have been directed for the defendant, and said among other things:

"The obligation of a master to provide reasonably safe places and structures for his servants to work upon does not oblige him to keep the building that they are employed in erecting in a safe condition at every moment of their work so far as the safety depends upon the due performance of that work by them and their fellow servants."

To the same effect are Armour v. Hahn, 111 U. S. 313; Murphy v. Greeley, 146 Mass. 196; and Richardson v. Anglo-American Provision Co., 72 Ill. App. 77.

We think it clearly appears from the evidence that the defendant violated no duty to the deceased. It further appears that the deceased was himself guilty of negligence in stepping upon a joist upon which two men were actually at work putting it in place. He was so close to one of the men who was working upon the joist that he cautioned him to "look out or I will knock your head." This remark shows very conclusively that the deceased saw the man, knew where he was, knew what he was doing, and negligently stepped upon a loose joist which the man was putting in place.

We find no error in the record, and the judgment is therefore affirmed.

*Affirmed.*